In the Matter of the Accounting of JAMES W. OSBORNE, as Executor and Trustee under the Will of EUGENE LA GROVE, Deceased, Appellant.

IVY L. LA GROVE, Respondent.

Trust — dividends, cash or stock, representing profits on capital of stock corporations — rules for apportioning such dividends between life beneficiaries and the remaindermen of a trust estate — stock dividends from accumulated surplus — when derived from surplus accumulated before creation of trust, they belong to remaindermen — when accumulated thereafter, they belong to life beneficiaries.

1. Unless a testator, creating a trust, otherwise provides, the principal of a trust invested in corporate stock should not be impaired by the division of accumulated surplus among life bene-

ficiaries. The capital of a corporation cannot be divided among the beneficiaries of a life estate, and the capital of the trust fund should also be preserved, whether invested by the trustees in stocks of corporations at a premium, or acquired from the testator or maker of the trust. The surplus of the corporation existing at the formation of the trust or when the stock is purchased represents a part of the capital of the estate as fully as does the capital of the corporation.

2. In apportioning dividends, received from stock corporations, between the life beneficiaries and the remaindermen of a trust estate, the dividends should be paid as follows: (1) Ordinary dividends, regardless of the time when the surplus out of which they are payable was accumulated, should be paid to the life beneficiary of the trust. (2) Extraordinary dividends, payable from the accumulated earnings of the company, whether payable in cash or stock, belong to the life beneficiary, unless they entrench in whole or in part upon the capital of the trust fund as received from the testator or maker of the trust, or invested in the stock, in which case such extraordinary dividends should be returned to the trust fund or apportioned between the trust fund and the life beneficiary in such a way as to preserve the integrity of the trust fund.

3. Testator gave his property to his executor, in trust, to pay the income thereof, from the time of his death, to his wife during the term of her natural life, and after her death the principal to be divided as in his will provided. The principal part of the estate consisted of 3,000 shares of the capital stock of a manufacturing corporation. At the time of testator's death, in 1908, the corporation, whose capital was $30,000,000, had a surplus of accumulated earnings, arising exclusively from its business, amounting to over $37,000,000. In March, 1910, the executor sold 80 shares of such stock to pay specific legacies and other charges upon testator's estate. In June, 1910, the surplus of such company had increased to over $51,500,000. In that month the stockholders duly voted to retain $30,000,000 of such surplus as additional working capital and to increase the capital stock of the company to $60,000,000 and pay to the stockholders a stock dividend of $30,000,000 out of such increase of stock. Thereupon the corporation paid over and delivered to the executor a stock dividend of 2,920 shares of the par value of $100 each, being one share of increased capital stock for each share of old stock held by said executor. After the death of testator, and prior to the payment of such stock dividend, regular cash dividends on the old stock were paid to said executor which have been paid by him to the wife of testator, the life beneficiary

under his will. The question to be decided is, whether the life beneficiary is entitled to the whole of the stock dividend, or whether it should be apportioned between the beneficiary of the life estate and the trust fund. *Held*, that the part of such stock dividend which was earned after the creation of testator's trust should be awarded to the beneficiary of the life estate, and that the part earned before the creation of the trust be retained by the executor as part of the capital of the trust fund.

4. Upon a motion to amend the remittitur herein, it is *held*, that the intrinsic value of the trust investment is to be ascertained by dividing the capital and the surplus of the corporation existing at the time of the creation of the trust by the number of shares of the corporation then outstanding, which gives the value of each share, and that amount must be multiplied by the number of shares held in the trust. The value of the investment represented by the original shares after the dividend has been made is ascertained by exactly the same method. The difference between the two shows the impairment of the corpus of the trust. If the dividend is of money the amount of that difference is to be retained by the trustee as capital, and the remainder paid to the life beneficiary. If the dividend is in stock the amount of impairment in money must be divided by the intrinsic value of a share of the new stock, and the quotient gives the number of shares to be retained to make the impairment good — the remaining shares going to the life beneficiary. Market value, good will and like considerations cannot be considered in apportioning a dividend; nor is the trustee entitled to commissions on the amount to be retained in the corpus of the trust estate.

*Matter of Osborne,* 153 App. Div. 312, modified.

(Argued May 16, 1913; decided December 3, 1913.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered November 15, 1912, which affirmed a decree of the Kings County Surrogate's Court directing the executor and trustee under the will of Eugene La Grove, deceased, to distribute a certain stock dividend to the life tenant named in said will.

The facts, so far as material, are stated in the opinion.

*Gilbert D. Lamb* and *Robert D. Petty* for appellant. Upon the facts in the case at bar, the rules of law appli-

cable to cases wherein the language of the will is broad enough to include all stock dividends, and cases of ordinary or even extraordinary cash dividends, or their equivalents, are inapplicable. (*Matter of Russell*, 168 N. Y. 169.) This stock being regarded as based on earnings of the corporation, composed of items accumulated, both before and after the inception of the trust term, viz., October 4, 1908, the approved rule is to so apportion such dividend as to give the life tenant either merely a sum equivalent to the par or face value of the stock representing the proportion the fund accumulated after the inception of the trust bears to the entire fund, or the certificates in specie deemed to represent such proportion and no more. (*Gibbons* v. *Mahon*, 136 U. S. 549; *Bryan* v. *Aikin*, 82 Atl. Rep. 817; *Ballantine* v. *Young*, 79 N. J. Eq. 70, 74; *Matter of Harteau*, 204 N. Y. 292; Cook on Corp. § 554; *Day* v. *Faulks*, 79 N. J. Eq. 66; *Connelly Estate*, 198 Penn. St. 137; *Kemble Estate*, 201 Penn. St. 523; *Goodwin* v. *McGaughey*, 108 Minn. 248.) It appearing that on June 17, 1910, the date of the issuance of the stock dividend, the surplus was $51,560,757, of which $37,604,206 had been accumulated prior to October 4, 1908, the date of the inception of the trust term, and the stock dividend on June 17, 1910, being of a face value, as evidenced by the certificates, of $30,000,000, the latter may be regarded as exclusively representing the prior earned surplus, and, if so, this whole stock dividend really constituted capital and should be retained by the trustee for the benefit of the remaindermen. (*Jermain* v. *L. S. & M. S. R. R. Co.*, 91 N. Y. 483; *Burrall* v. *Bushwick R. R. Co.*, 75 N. Y. 211; *Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159; *People ex rel. Union Trust Co.* v. *Coleman*, 126 N. Y. 433; *Plimpton* v. *Bigelow*, 93 N. Y. 592; *O'Connor* v. *Gifford*, 117 N. Y. 277.) This court should adjudge that the entire stock dividend belongs to the plaintiff as trustee to be kept as a part of the trust estate; or, if not that, that the life tenant

should have of it the equivalent of the face value of only
fourteen fifty-seconds of the dividend; or, as the very
most to which she is entitled, that she should have abso-
lutely her fractional share (in round figures fourteen fifty-
seconds) of the stock dividend in specie, and that the resi-
due should be retained as the corpus of the trust fund.
(*Day* v. *Faulks*, 79 N. J. Eq. 66; *Ballantine* v. *Young*,
79 N. J. Eq. 74.)

*Louis Marshall* and *Jerry A. Wernberg* for respond-
ent.  A dividend payable out of the surplus of a corpora-
tion, whether it be in the form of a cash dividend or a
stock dividend, and irrespective of the time when the sur-
plus was earned, in the absence of testamentary direction
to the contrary, belongs to the life tenant and not to the
remainderman.  (*Matter of Kernochan*, 104 N. Y. 618;
*Monson* v. *N. Y. Security & Trust Co.*, 140 N. Y. 498;
*Matter of Dewey*, 153 N. Y. 63; *McLouth* v. *Hunt*, 154
N. Y. 179; *Lowry* v. *F. L. & T. Co.*, 172 N. Y. 137; 56
App. Div. 408; *Robertson* v. *de Brulatour*, 188 N. Y. 301;
111 App. Div. 882; *Richmond* v. *Richmond*, 123 App.
Div. 117; 196 N. Y. 535; *Thayer* v. *Burr*, 201 N. Y. 155.)

Chase, J.  Eugene La Grove died a resident of this
state October 4, 1908, leaving a will which was duly pro-
bated and by the fourth paragraph of which a trust was
created as follows:

" All the rest, residue and remainder of my property
and estate, real, personal and mixed of every description
and wheresoever situated of which I may die seized or
possessed  *  *  *  I give, devise, and bequeath to my
executor and trustee hereinafter named in trust, to hold
said property and estate and invest and reinvest the same
and to collect the rents, issues, income and profits there-
from, and to pay the net rents, issues, income and profits
therefrom quarterly to my wife, Ivy Lee La Grove from the
time of my death during the term of her natural life, and,
upon her death, to divide the principal into as many shares

as my wife shall leave children by our marriage her surviving * * * but in the event that my said wife shall die leaving no issue her surviving, then at her death the principal so set apart for her benefit shall be paid to such person or persons as would be entitled to share in her estate were she to die intestate under the statute of distribution in force at the time of her death in the State of New York."

The testator did not leave any descendants. Ivy Lee La Grove, who was his wife, is living. The rest, residue and remainder of the property, as provided by the fourth paragraph of the will, is held in trust by James W. Osborne as trustee pursuant to the provisions of such paragraph.

The will also provides in the fifth paragraph thereof as follows:

"I hereby request my executor and trustee under this my will not to sell any stocks that I may hold at the time of my death in the Singer Manufacturing Company, unless the remainder of my property and estate is insufficient to pay my just debts and funeral expenses and the specific legacies and charges in this my will contained; and in case such remainder of my estate is insufficient to pay such debts and funeral expenses and the specific legacies in this my Will contained, then and in that event I request my Executor to sell only so much of the stock of said Company as is necessary to be sold in order to pay such debts, legacies and charges. I authorize, however, my Executor and Trustee created under this my Will that should he so elect, he may sell said stock or any of the same and in his discretion change the investment of said trust funds and should my Executor and Trustee elect to sell said stock or any part thereof, that he shall at all times keep the proceeds thereof as well as any other part of the trust funds herein devised or bequeathed invested in stocks and bonds of the United States or of the State of New York and such stocks and bonds or other

investments as may be at the time legal investments for trust funds in the State of New York."

The principal part of the estate of the testator consisted of three thousand shares of the stock of the Singer Manufacturing Company, a corporation organized and existing under the laws of the state of New Jersey. The capital stock of the Singer Manufacturing Company at the time of the death of the testator was $30,000,000. On that day it had a surplus of accumulated earnings arising exclusively from the business of the company amounting to $37,604,206.

On June 17, 1910, such surplus had increased to $51,560,757. On March 31, 1910, the executor sold eighty shares of the stock of said company. On June 2, 1910, the board of directors of said company passed a resolution as follows: "Whereas this corporation now has a capital stock of thirty millions of dollars issued and outstanding and a surplus of thirty millions of dollars and upwards, and, whereas, it is desirable that said surplus to the extent of at least thirty millions of dollars should be retained by the corporation as working capital, and to that end that its capital stock should be increased to sixty millions of dollars and a stock dividend of thirty millions of dollars be declared out of such increase, therefore, be it resolved:

"*First.* That it is advisable to increase the capital stock of this corporation to sixty millions of dollars, and

"*Second.* That it is advisable to declare and pay to the stockholders of the corporation a stock dividend of thirty millions of dollars out of such increase of stock.

"And the board does hereby call a special meeting of the stockholders to be held at the company's office at the Singer Building in the City of Elizabeth on the sixteenth day of June, 1910, at three o'clock in the afternoon, to take action upon the above resolution and decide whether or not such increase of stock shall be made."

On said 16th day of June, 1910, the stockholders

adopted a resolution as follows: "*Resolved*, that the directors be and they hereby are authorized and empowered to forthwith declare a stock dividend of thirty millions of dollars, or one hundred per cent on the present issued capital stock of this company, and to issue forthwith in payment thereof certificates of fully paid nonassessable stock, to the stockholders of record at this date, in the amounts in which they are respectively entitled to the same."

On June 17, 1910, the board of directors of said company adopted a further resolution as follows: "*Resolved*, that the directors declare and they do now declare a stock dividend of thirty millions of dollars, or one hundred per cent on the present issued capital stock of this company payable forthwith to the stockholders of record on the 16th day of June instant out of said increase of stock, and that the president and treasurer be and they hereby are authorized and directed to issue forthwith to the several stockholders of record on the said 16th day of June instant, certificates for so many shares of fully paid and non-assessable stock as said shareholders shall severally be entitled to in payment of said dividends."

Thereupon and on the same day, June 17, 1910, said company paid over and delivered to James W. Osborne as such executor a stock dividend of 2,920 shares of the par value of $100 each, being one share of increased capital stock of said company for each share of old stock theretofore held by said Osborne as executor, and said stock remains in the possession of said Osborne as such executor and trustee.

After the death of La Grove and prior to the payment to Osborne as such executor of the stock dividend, regular cash dividends had been paid on said stock amounting in the aggregate to $242,564.18, which has been paid from time to time by said executor to said Ivy Lee La Grove, the beneficiary under the trust, as provided by said will.

The troublesome question as to who is entitled to extraordinary dividends declared upon stock held in trust as between life beneficiaries under the trust and the remaindermen, is again presented to us for our consideration.

The question has been considered by the courts in this and other states and countries in many and various forms from time to time since the decisions and opinions of the courts have been published. It has been said that no question before the courts has been more troublesome. Certainly none has resulted in greater contrariety of views. Decisions that are apparently contradictory either in the same court or in the courts of different states and countries have, however, been caused in part by different facts and circumstances existing in the cases decided, and the effect necessarily given to the language of the will or instrument creating the trust in the particular cases in which the decisions have been rendered.

In determining who is entitled to a dividend upon stock held in trust the intention of the testator or the maker of the trust must be carried out when such intent is clear, so far as such intent does not result in an unlawful accumulation of income. Very many cases arise, however, where the testator or maker of the trust had not considered the possibility of enormous dividends being declared by corporations to effectuate their reorganization or in the division of accumulated profits made necessary by new statutes, changed circumstances and modern rules and conditions, or, if such testator or maker of the trust had considered such possibility he failed to express himself in the instrument creating the trust so as to show any clear intention regarding the same.

In England, as far back as 1799, it was established as a rule that all extraordinary or unusual dividends declared during the continuation of a life estate whether payable in cash or in stock belong to the corpus of the fund and not to the income. (*Brander* v. *Brander*, 4 Ves. Jr. 800.) The decision in the case cited was repeat-

edly followed and the rule re-stated. The rule in England as stated in the earlier cases has been materially modified and dividends of cash are now held to belong to the life tenant and stock dividends to the remainderman, subject, perhaps, to an examination of the facts and circumstances in each case in applying the rule as stated. (*Bouche* v. *Sproule*, L. R. [12 App. Cas.] 385.)

In Massachusetts, in *Minot* v. *Payne*, reported in 99 Mass. 108, it is said: " A simple rule is to regard cash dividends, however large, as income, and stock dividends, however made, as capital." The courts of that state have followed such rule, taking unto themselves, however, the right to determine whether a stock dividend is in effect a distribution of cash to be treated the same as a cash dividend.

In Pennsylvania it was held in *Earp's Appeal*, reported in 28 Penn. St. 368, that ordinary dividends on stock held in trust belong to the person entitled to the income of the trust fund, but that extraordinary dividends should be apportioned between the life estate man and the remainderman in accordance with the amount thereof accumulated before and after the creation of the trust.

The question has been considered by the courts of nearly every state in the Union and by the Federal courts. It would be quite impossible to reconcile the many reported decisions. An effort to determine the weight of authority would be difficult and extend this opinion to unjustifiable length. It is not our purpose, therefore, to analyze or attempt to state the decisions of other jurisdictions or to refer to them except as we have herein to illustrate the extent of the conflict regarding the question now considered.

In this state the question was considered in *Clarkson* v. *Clarkson* (18 Barb. 646 [1855]). In that case one Clarkson died in September, 1845, leaving a will by which he left parts of his estate in trust for two of his children respectively. The trustees were directed to invest the

same and pay the "interest, dividends and proceeds arising from the two said respective shares and portions from time to time, as they shall be received, to my said daughters * * * for and during the term of their natural lives respectively; and upon the decease of either of said daughters, * * * to assign, transfer and pay over the share " as therein provided.

In January, 1846, the trustees invested $12,600 in the capital stock of the Utica and Schenectady Railroad Company by purchasing one hundred shares thereof at the price of $126 per share, and in February, 1853, the further sum of $6,000 in the capital stock of the Mohawk Valley Railroad Company by purchasing sixty shares of its stock of $100 each at par. The shares of the Utica and Schenectady Company thereafter paid an annual dividend of ten per cent upon their par value, which annual dividend was paid from time to time by the trustees to the *cestui que trust*. On the 30th day of December, 1850, there was paid to the trustees on the shares of the Utica and Schenectady Company an extra dividend of sixty per cent on the par value of its stock in the capital stock of said corporation at par amounting to $6,000. In May, 1853, a consolidation of the Utica and Schenectady Railroad Company, the Mohawk Valley Railroad Company and other railroad companies took place and a new corporation was created called The New York Central Railroad Company. By the terms and conditions of such consolidation the trustees received shares of said Central Company equal in number to those held in the two other companies, being two hundred and twenty shares of $100 each, and also received bonds of the Central Company to the amount of $55 on each of the 220 shares held by them in the two other companies. It appears that the stock of the Central Company was then worth $115 per share and the bonds ninety per cent of their par value. The court in its opinion after referring to English and other authori-

ties say: " Uncontrolled by precedent, and considered upon principle only, the case seems very plain. * * * The stock payment of sixty per cent made upon this investment, was properly dividends extraordinary in amounts, not in manner of payment; that being a matter of policy with the company. ' Dividends,' as used in the will, is unqualified; it includes, in its technical sense, as well as in its ordinary and common acceptation, all distributions to corporators, of the profits of the corporation, whether such distributions are large or small. * * * The testator is presumed to have used words in their natural and primary sense; and from the terms used, in his will, it is clear that he intended that all the gains, profits, income and proceeds of the two shares of his estate, of whatsoever kind, name or nature, should go to his daughters, as tenants for life; and that intention should not be defeated. If the payment of extraordinary dividends has impaired the capital, such capital should be restored by additions from such dividends. * * * But the case is different with respect to the bonds or certificates of the Central Railroad Company received by the trustees on the 17th of May, 1853. Those bonds were not paid to the trustees, either as interest, dividend or proceeds; but as the difference between the value of the stock of the old railroad corporations and the new, and are therefore to be regarded as capital, the same as though no consolidation transfer had taken place, except that those bonds received as difference for the sixty shares will follow their principal and go to the *cestuis que trust*. Unless the parties otherwise agree, a referee must be appointed, to ascertain the present value of the remaining one hundred and sixty shares of the Central railroad stock held by the said trustees, and the value of the remaining bonds or certificates and report the same to one of the justices of this court. Upon the coming in of that report, should the value of such stock and bonds and certificates be equal to the capital invested, or if deficient, upon the tenants for life making up such deficiency, a

decree will be entered, directing said trustees to deliver over to the *cestuis que trust* the sixty shares of stock dividend, the bonds and certificates received on the same, and all dividends thereon received by said trustees." (p. 656.)

It will be seen that the price paid for the stock was treated as the capital invested by the trustees and that it was held that the *cestui que trust* was entitled to all dividends of every kind declared upon the stock so far as the same did not intrench upon such capital of the trust fund. An apportionment of the dividends was provided for if necessary to preserve the principal of such trust fund.

In *Simpson* v. *Moore* (30 Barb. 637 [1859]) one Wilson died in 1837 leaving a will by which he gave one-sixth of his estate in trust " to retain and invest, and keep invested from time to time upon real estate security or in stocks by them deemed safe, and to apply and pay over the income thereof, from time to time, as it may be received, to my wife,   *   *   *   during her life."

The will directed that after the death of his wife such one-sixth of the estate be divided among the children of the testator. The trustee in the year 1844 purchased 69 shares of the national bank at $50 per share, that being the par value thereof. The charter of the bank expired January 1, 1857. The bank was reorganized, and preparatory thereto it declared a dividend of eighteen per cent. The trustee took the dividend in new stock. The trustee also in 1848 purchased fifty shares of the stock of the Merchants' Bank at $50 each, that being the par value thereof. The charter of that bank expired January 1, 1857, and preparatory to reorganization it declared a dividend of twenty-six per cent and the trustee took such dividend in new shares of the bank. A question arose as to whether the stock constituting such dividends should be delivered to the wife, who was entitled to the income for life, or be held for the benefit of the remaindermen. The court say: " The testator intended all the income of the property which he ordered to be invested

should be paid to the wife, but that the capital so invested should be preserved. Under the case of *Clarkson* v. *Clarkson* (18 Barb. 646) the payments in question must be considered as dividends; but as they contained part of what was held as capital when the stock was purchased, so much thereof as was necessary to make up the original investment, over and above the par value of the stock taken by the trustee in exchange, should be retained by him, and the residue belongs to the plaintiff." (p. 640.) It will be seen that provision was made to keep the principal of the trust fund unimpaired.

In *Matter of Woodruff* (1 Tucker, 58 [1865]) a testator died in 1855 leaving a wife, five sons and four daughters. He left the residuum of his estate in trust for the benefit of his widow and the remainder over to his sons. There came into the hands of his executor from his estate nine hundred and four shares of the capital stock of the Manhattan Gas Light Company. Two days after the testator's death the legislature authorized an increase of the capital stock of the corporation from two to four millions of dollars. Thereafter and in 1855 the corporation declared an extraordinary dividend out of the surplus profits of the corporation of eighteen dollars per share. The executor and trustee accepted new stock and the dividend was credited thereon. It was held that the dividends belonged to the widow. In this case, however, the question of the impairment of capital was not considered and the decision purports to be based on *Clarkson* v. *Clarkson*.

In *Goldsmith* v. *Swift* (25 Hun, 201 [1881]) a person by deed of trust in 1856 transferred one hundred shares of the New York Central Railroad Company to a trustee to pay to the maker of the trust all dividends declared on said stock during his life and after his death to his daughter during her life with remainder over to the descendants of the daughter. In 1868 the company issued to its shareholders certificates to the amount of eighty per cent

of the capital stock held by them respectively as evidence of earnings expended for the purpose of constructing and equipping its road and in the purchase of real estate and other properties.

In 1869 the company was consolidated with the Hudson River Railroad Company, and the new company to equalize the values of the two companies issued new stock in place of the stock held under the deed of trust, the certificate for the eighty per cent thereof and an additional twenty-seven shares, making two hundred and seven shares in all.

The court held that the twenty-seven shares were a part of the corpus of the trust fund, but that the eighty shares were a dividend belonging to the *cestui que trust*. It does not appear that any part of the earnings was accumulated prior to the creation of the trust.

*Cragg* v. *Riggs* (5 Redfield, 82 [1880]) was a proceeding in Surrogate's Court for an accounting. The will of the testator provided a trust by which the net interest, dividends, or other periodical income thereof was given to a daughter for life, and after her decease to her descendants. The question arose as to what should be done with certain stock dividends declared upon stock held in the trust. The court, referring to many cases in this and other states, and particularly to the decision in the case of *Clarkson* v. *Clarkson*, says: "The real inquiry is how much of the stock dividend was capital, or made to represent an increase in the value of the property, and how much came from income or earnings, and also, how much of the stock dividend was made up of accumulations before, and how much from earnings after, the investment. And this, it seems to me, is the rational and equitable rule, by which to determine the question as to the relative rights of the life tenant and remainderman." The court further says "that the trustee, in the adjustment of those rights, should look to the real question, whether the dividends represent income or profits, or capi-

tal, without regard to the form of the dividend, or the name by which it is declared.   Otherwise the *ipse dixit* of the corporation would be substituted for the judgment of a court which alone has competent jurisdiction."   The court concluded that the stock dividend was income or profits and should be credited to the income account.   It further said: " But it is my duty to say, that if there were anything in this case to warrant the conclusion that any of the dividends so declared, whether in cash or stock, included income earned before the death of the testator, and before the rights of the life tenant attached, I should deem it my duty to send the matter to a referee, to take an account in respect thereto."

This case was appealed and the decision in the General Term is reported in 26 Hun, 89 (1881), and in the opinion the court say: " Under the resolution which was adopted it was stated that the funds of the company had been accumulating for twenty years past, and that a special dividend of $50 a share should be declared  *  *  *  when this accumulated fund was acquired, was not otherwise made to appear than by the statement of it contained in the resolution.   *  *  *  but if evidence of that nature had been given it could not very well have produced any change in the determination, for the reason already stated, that dividends are not apportionable, but are legally considered as accruing only from the time when they may be declared.   This dividend was declared nine years after the estate had passed into the hands of the executors." (p. 102.)

An appeal was then taken to this court and it is reported in 89 New York, 479 (1882), where the judgment of the General Term and the decree of the surrogate were reversed for lack of jurisdiction.   In the opinion of the court it is said: " Are stock dividends, representing earnings and profits of a corporation, expended in construction or improvements of the corporate property, declared during the life tenancy, to be regarded as between the

30

life tenant and remainderman, as accretions to the capital, or as income? If declared out of accumulated profits earned before the inception of the life tenancy, are they capital or income as between these two interests? If they represent earnings made partly before and partly during the life tenancy are they apportionable? The right to stock dividends as between tenant for life and remainderman, has not been considered by the court of last resort in this state. The decisions upon the subject in other states and in England are conflicting, and it will be the duty of this court, when occasion arises, to seek to settle the question upon principle, and establish a practical rule for the guidance of trustees and others, which shall be just and equitable as between the beneficiaries of the two estates." (p. 487.)

In *Matter of Kernochan* (104 N. Y. 618 [1887]) it appeared on an accounting by executors that a corporation had declared a dividend of $24.26 on each share of certain capital stock held in trust by the executors. The court, referring to the action of a referee appointed in the proceeding, say: "The referee made the apportionment in question by ascertaining how much was earned before and how much after the death of the testator, and so doing applied a rule which may be founded on general equity, namely: that when a fund is given for life to one beneficiary, and remainder over, the first shall have its earnings after his life tenancy begins, and the remainderman the balance. I find nothing in the will which indicates that the testator intended any such investigation or division, or that any other than the ordinary rule, which gives cash dividends declared from accumulated earnings or profits to the life tenant, should be applied. The direction to his executors is to receive the rents, interest and income of his estate, and apply the net amount of such rents or other income (with certain exceptions not now material) to the use of his wife. From the shares in question no income could accrue, no profits arise to the holder until

ascertained and declared by the company and allotted to the shareholder, and that act should be deemed to have been in the mind of the testator, and not the earnings or profits as ascertained by a third person, or a court upon an investigation of the business and affairs of the company, either upon an inspection of their books or otherwise." (p. 627.)

In *Matter of Warren* (2 Con. Surr. 411 [1890]) the testator died in 1879. He had subscribed at the organization of the Newburgh National Bank in 1864 for fifty shares of the capital stock for which he paid $5,000. The will of the deceased gave to his wife the use, interest and income during her natural life of the rest and residue of his estate and the remainder over to persons named. In 1890 the bank by resolution returned to the stockholders one-half of the capital of the bank at par with premium of forty per cent payable out of the surplus profits. On an accounting in the estate the court says: "This payment of 40 per cent on that part of the capital of the bank which was retired was however an unusual and extraordinary dividend, and there may be a doubt whether it is to be considered as a dividend of earnings to the shareholders, or whether it should not be considered a payment back to the shareholders of capital." It did not appear when the surplus was earned and the forty per cent was awarded to the widow.

In *Matter of Rogers* (22 App. Div. 428 [1897]) the questions before the court relate to the division of the property of a corporation in liquidation. The opinion is an instructive one and in it the court, referring to a going concern and to extraordinary dividends, say: "When the former declares a dividend the title to the money is taken from the corporation and vested in the shareholder; whether rightly or wrongly declared, as a matter of fact the money is separated from the share of stock; it is no longer a part of the capital of the company. * * * The rule that the courts will not look to see from what

source the dividend has been paid, is a rule of convenience more than one of absolute justice. In certain States, as in Pennsylvania, the rule is repudiated. In *Vinton's Appeal* (99 Penn. St. 434) it is said: 'The rule * * * is a very simple and convenient one, and may relieve trustees and courts of much trouble, but it is certainly not one that commends itself for its justice and equity, * * *. To us, it seems like a bungling rule of law that, at one time, would give what is indisputably income to the remainderman, and, at another, what is as clearly capital to the life tenant.' I imagine that, in an instance of a dividend made by a going concern, the dividend might proceed to such an extent from the alienation of the capital or of the franchise of the company as to shock the sense of justice, if held income, and to make it an exception to the rule even in this State." (p. 432.)

In *McLouth* v. *Hunt* (154 N. Y. 179) a testatrix, Caroline Cuyler, died September 18, 1888, owning 254 shares of the Western Union Telegraph Company stock. A resolution of the board of directors of the telegraph company was adopted at a meeting held September 14, 1892, recommending an increase of the capital stock from $86,200,000 to $100,000,000. At another meeting held November 10, 1892, it was further resolved that out of the increased stock amounting to $13,800,000 there be distributed and transferred to the credit of stockholders of record on the 19th day of November, 1892, issuable on and after December 3, 1892, an amount equal to 10% of the stock held by the stockholders respectively, and that the remainder of the increase be held in the treasury subject to the further order of the board of directors. It appears by stipulation that the surplus earnings of the telegraph company on September 30, 1888, were $7,766,380.81, and on September 30, 1892, $14,455,757.16. The new stock distributed amounted to $8,620,000, being more than the difference between the surplus of September 30, 1888, and that of September 30, 1892, but per-

haps not more than the difference between the surplus September 18, 1888, the date of the death of the testatrix, and December 3, 1892, the date provided by the board of directors for the actual issue and distribution of the new stock.

In this case the appellant sought to have a different rule applied in the case of a stock dividend than would be applied in the case of a cash dividend. He did not attempt to show that the stock dividend was for an amount in excess of the earnings of the corporation accumulated subsequent to the death of the testatrix. The respondent insisted that the stock dividend should be given to the beneficiaries for years of the trust because the testatrix intended as shown by her will that such beneficiaries should have all dividends regardless of the question as to whether such dividend had been earned after or prior to her death, and he also contended that it should be given to the defendants as such beneficiaries because it represented earnings accumulated after the death of the testatrix.

The court clearly holds that no distinction should be made between a stock dividend and a cash dividend on that ground alone. It did not discuss the question as to whether a dividend partly earned before the death of a testator and partly earned after the death of a testator, whether the same was payable in cash or in stock, should be apportioned between the beneficiaries for years or life, and those entitled to the residue.

In *Chester* v. *Buffalo Car Mfg. Co.* (70 App. Div. 443) it is held that a stock dividend therein considered was but an increase of the capital stock in order to make such capital stock correspond with the actual working capital of the corporation. In the opinion, the court say: " While it is subject to modification and variation, the natural and fundamental idea of life income payable under a will is of that current income which accrues and becomes payable from time to time during the life tenancy upon a

principal fixed as of the time when the trust took effect and remaining substantially unchanged. Sometimes the amount of this principal is fixed by directions for the investment of a definite sum, and at other times by the appropriation of specified securities as bonds or stocks. In the case of the latter, while it may happen that by means of an extraordinary dividend there will be allotted to the life tenant a certain per cent of profits which accrued before his estate commenced, that is the unusual course rather than otherwise. We certainly do not expect or readily accept such a solution between the life tenant and remaindermen through the medium of dividends as will divide a testator's estate as it existed at his death between the former and the latter in the proportion of three or four shares to the former for one to the latter." (p. 451.) ·

In *Lowry* v. *Farmers' Loan & Trust Company* (172 N. Y. 137) John Lowry, the testator, died January 26, 1895, the owner of fifty shares of the capital stock of the Pullman Palace Car Company. The Farmers' Loan and Trust Company became a trustee under his will. While holding the trust and in the fall of 1898 the car company declared a stock dividend of fifty per cent payable to the owners of its capital stock on the 15th day of November, 1898. The court held that the dividend belonged to the life beneficiary. The testator provided by his will that "The entire income from such securities shall be applied as income, irrespective of the price paid for the securities or the subsequent value thereof; it being my will that no part of such income shall be diverted to form a sinking fund to replace any loss to the principal by depreciation in value of the securities." (p. 138.) The decision in that case might well have proceeded on the language of the will, for it was entirely within the power of a testator to make that income which by law without testamentary disposition, would be principal, though a testator has not that power in the reverse direction. (*Pray* v. *Hegeman*, 92 N. Y. 508; *Hascall* v. *King*, 162 id. 134.)

In *Robertson* v. *de Brulatour* (188 N. Y. 301) John T. Farish, the testator, died May 13, 1891, leaving a will in which he created a trust for the benefit of his wife. He owned at the time of his death 2,500 shares of the capital stock of the New York and Harlem Railroad Company and also certain shares of the capital stock of the Chicago, Rock Island and Pacific railroad on each of which shares of stock extraordinary dividends were subsequently declared which were awarded to the life beneficiary. Judge GRAY, who wrote the opinion in this court, referring to the provision for the testator's wife, said: "I entertain the opinion that the trust clause of this will is comprehensive enough to include the extraordinary dividends or distributions in question, however they may be termed, which were made by the New York and Harlem Railroad Company and by the Chicago, Rock Island and Pacific Railroad Company." (p. 306.)

The decision in this case may well have been left upon the construction of the will as stated by the court.

In *Thayer* v. *Burr* (201 N. Y. 155) it appears that Frances A. C. Headley died March 25, 1884, and by her will created a trust. She died owning fifty-eight shares of the stock of the Adams Express Company, which were thereafter held in said trust. On February 9, 1898, the express company distributed $12,000,000 of its bonds among its stockholders, being $100 per share, and on June 17, 1907, another distribution of $24,000,000 of its bonds was made, being $200 per share. When the trust came into being the assets of the company amounted to $14,050,000. When the last distribution of bonds was made it amounted to $40,800,000. The court in the opinion say: "The difference between these two sums is $26,750,000. The total distribution of bonds was $24,000,000. On this statement the amount distributed did not equal the amount of the earnings during the trust period but the result is modified by the stipulated fact that in the valuation of the assets at the termination

of the trust $7,000,000 represented, not earnings, but simply the increased or enhanced market value of the securities held by the company. It is very plain that the life tenant was not entitled to this increase in the value of the corpus of the trust any more than she would have been chargeable for any depreciation in the value of the corpus. The true earnings instead of being $26,750,000 were $19,750,000 and of the $24,000,000 of distribution, $4,250,000, represented in reality the distribution of capital. Therefore, the life tenant was entitled only to 1975 twenty-four hundredths parts of the bonds she received, the other 425 parts belonging to the remaindermen." (p. 157.) The decision was intended to be a recognition of the right to an apportionment of the dividend so as to preserve the corpus of the trust estate. The division was computed upon that basis as incontestably appears from the fact that the *amount of the trust fund at the creation of the trust was in fact preserved*. As stated by the opinion the court deducted from the assets of the corporation at the last distribution the *total assets* at the creation of the trust ($40,800,000 — $14,050,000 = $26,750,000). Then from the $26,750,000 the $7,000,000 increase in value of assets was deducted, leaving $19,750,000 and by so doing an intrenchment upon the assets of the corporation is shown of $4,250,000. An apportionment of the dividend was made accordingly. The judgment of this court was based upon the necessity of preserving the trust fund as it existed at the creation of the trust including accumulated earnings of the corporation prior to that date. It was not based upon the alleged right in the life estateman to all dividends so long as they did not intrench upon the capital *of the corporation*.

In *Matter of Harteau* (204 N. Y. 292, 298) a dividend from the surplus earnings of the Metropolitan Plate Glass Insurance Company was considered. As stated by Judge BARTLETT in the opinion the questions involved

were "1. * * * 2. Is the sum received by the executors and trustees for the additional stock purchased with the surplus dividend of the Metropoliton Plate Glass Insurance Company to be regarded as *capital or income?*" Subsequently, referring to the second question, he says: "The question *whether the surplus dividend is to be deemed capital or income depends upon the time of the acquisition of the surplus which was divided.* The amount of the dividend was $100,000; the findings of the surrogate show that on December 31, 1895, shortly after the testator's death, the surplus of the Metropolitan Plate Glass Insurance Company was $190,000, and that at the time of the adoption of the resolution for the dividend it was $279,000, an increase of $89,000 within that period. This increase which, under the doctrine of *Robertson* v. *de Brulatour* (188 N. Y. 301); *Thayer* v. *Burr* (201 N. Y. 155) and other cases, is to be regarded as income, was 89% of the total dividend; and, consequently, 89% of that portion of the dividend which went to the executors must also be deemed income. This amounted to $17,722.39. * * * It follows that the order of the Appellate Division and the decree of the surrogate should be modified so as to charge the executors and trustees with $17,722.39 instead of $19,912.80 as income arising out of the proceeds of the sale of 160 shares of the Metropolitan Casualty & Insurance Company, and with the balance thereof as capital of the estate." This modification was an express recognition of Judge BARTLETT's statement that whether "*The surplus dividend is to be deemed capital or income depends upon the time of the acquisition of the surplus* which was divided."

The extended statement of the principal and most frequently quoted decisions in this state relating to the question involved has seemed necessary because of the difference of opinion expressed by counsel relating thereto. It will be seen that the earlier and also the latest decisions in this state clearly recognize and assert

that where extraordinary dividends entrench upon the capital of the trust fund they should be returned to such trust fund so far as necessary to preserve the same. Recognizing as we must that a testator or maker of a trust may if he chooses provide that a part of the principal of a trust fund be paid to a life beneficiary of the trust, and that the courts must carry out such intention, all of the decisions in this state can be sustained without violating the right when it is not so controlled by the instrument creating the trust, to have the principal of the trust fund kept unimpaired by the division of accumulated surplus among life beneficiaries.

It is conceded that the capital of a corporation cannot be divided among the life beneficiaries. It is not alone the *capital of the corporation* that should be preserved, but the *capital of the trust fund* whether invested by the trustees in stocks of corporations at a premium, or acquired from the testator or maker of the trust. The surplus of the corporation existing at the formation of the trust or when the stock is purchased represents a part of the capital of the estate as fully as does the capital of the corporation. The division by corporations of their surplus accumulated through a long period of years in very large amounts is now comparatively common, when until within a very recent time such division of enormous amounts was seldom, if ever, made.

Recently a well-known bank in this state with a capital of $300,000 and a large surplus divided its surplus by declaring an extra dividend of $2,700,000, or 900 per cent, and increased its capital stock to $3,000,000, allowing its stockholders to subscribe for the increase and pay for the same by the dividend thus declared.

Another well-known bank in this state with a capital of $500,000 and a very large surplus divided its surplus by declaring an extra dividend of $9,500,000, or 1900 per cent, and increased its capital stock to $10,000,000, allowing its stockholders to subscribe for the increase and to pay

for the same by the dividend thus declared.    Instances of the declaration of very large extraordinary dividends by corporations within the last few years could be multiplied in great numbers.

We refer to these cases simply to illustrate the great injustice that may be done to the ultimate beneficiaries of a trust fund if a large part of such fund as invested must necessarily by reason of an extraordinary dividend and an arbitrary rule be paid over to the life beneficiaries of the trust.    If dividends by a corporation payable out of surplus earnings whenever accumulated must be paid to the life beneficiaries of the trust unless special provision to the contrary is made in the will or instrument creating the trust, it will make the retention or purchase of stocks by a trustee in corporations having a large surplus a matter of questionable propriety.    It must also be remembered that if all such dividends are adjudged to constitute income as a matter of law then their retention in the trust even by direction of the testator or maker of the trust would in many instances amount to an unlawful accumulation of income.

We think that in each case the court should look into the facts, circumstances and nature of the transaction and determine the nature of the dividend and the rights of the contending parties according to justice and equity.

In Cook on Corporations (6th edition, chapter 33, section 552) it is said: "Where shares of stock are held by an estate, and the income of the estate is to go to a life tenant for life, and the remainder to another party, the question of whether the life tenant or the remainderman is entitled to a stock dividend or extraordinary cash dividend is a perplexing one.    The stock dividend or extraordinary cash dividend may represent profits which were earned or accumulated before the life tenancy began.    In that case it is clear that in justice the remainderman should receive it.    If, however, it was earned after the life tenancy began, it is clear that the

life tenant should have it. If it was earned partly before and partly after the life tenancy began, then it is apparent that in justice some apportionment should be made if possible."

In Thompson on Corporations (2nd edition, section 5414) it is said: "The courts now inquire into the actual nature and source of dividends for the purpose of determining their character, and as between the life tenant and remainderman if they are found to represent earnings that accrued prior to the creation of the trust they belong to the corpus of the trust; or if they represent the natural growth and increase in the value of the corporate plant and business, whether that growth and increase took place before or after the trust was created, they are to such extent capital. The court, in making the inquiry, concerns itself with the substance of the transaction, and not the form in which the corporation has seen fit to clothe it, and the fact that a dividend is distributed in cash or stock is said to be of little importance in determining whether it is capital or income. * * * The object of the inquiry in every case should be to do justice to the life tenant and remainderman, and at the same time effectuate the intention of the creator of the trust; and on this theory, in order to effectuate such intention and to do justice between the parties, a court may, under the circumstances of a given case, apportion a dividend between the life tenant and the remainderman."

It is manifest that any apportionment of a dividend is more or less troublesome in the practical handling of trust estates. It may be necessary in many cases to make the apportionment of dividends in an accounting by the trustee where all the parties interested are bound thereby. The dividends usually declared by corporations are the ordinary dividends such as are declared from year to year or at other regular dividend periods. Extraordinary dividends are the exception. In all cases of ordinary dividends the courts uniformly hold that they

should be paid to the life beneficiary of the trust in conformity with the general rule that dividends are deemed to have been earned as of the date of their declaration. In cases of extraordinary and unusual dividends declared in whole or in part from earnings actually accumulated prior to the creation of the trust or the purchase of the stock an adherence to the rule that dividends are deemed to have been earned as of the date of their declaration in many cases shocks the sense of justice.

Notwithstanding the difficulty in many cases of apportioning dividends, it is wiser and better to leave an apportionment to courts of equity, in preference to adhering to a rule that depends more upon its simplicity and convenience of enforcement than upon justice and right. The distinction between ordinary and extraordinary dividends is necessary to make a workable rule and at the same time preserve the integrity of the trust fund. The integrity of the trust fund and rights of the life beneficiary under the trust should each be considered, determined and preserved by a court of equity. As far as the courts in this state have made statements to the contrary, it has been in opinions where such statements have been unnecessary to the determination of the case then under consideration, and such statements are disapproved. It should be held: 1. Ordinary dividends, regardless of the time when the surplus out of which they are payable was accumulated, should be paid to the life beneficiary of the trust. 2. Extraordinary dividends, payable from the accumulated earnings of the company, whether payable in cash or stock, belong to the life beneficiary, unless they entrench in whole or in part upon the capital of the trust fund as received from the testator or maker of the trust or invested in the stock, in which case such extraordinary dividends should be returned to the trust fund or apportioned between the trust fund and the life beneficiary in such a way as to preserve the integrity of the trust fund.

It has been argued that the will in this case as quoted shows that the testator intended that the value of the stock of the Singer Manufacturing Company owned by him at his decease should be preserved inviolate and it is also argued that it was not the intent of said corporation as shown by the resolution quoted to distribute the surplus of the corporation but to capitalize it so that thereafter it should be incapable of distribution. It is not necessary to discuss the question so presented in view of the decision that we are making herein.

This case is one that requires an apportionment of the dividend. There is no dispute about the portion thereof that was earned prior to the creation of the trust, and the decree of the surrogate and order of the Appellate Division should be modified so as to award $\frac{13956551}{51500737}$ parts of the stock dividend to the respondent and directing that the remainder thereof be retained as a part of the capital of the trust fund, and as thus modified the order and decree should be affirmed, with costs to the appellant and respondent payable out of the estate.

GRAY, J. (dissenting). I think we should affirm the determination made below. The question presented by this appeal relates to the application by the trustee of a testamentary trust of a stock dividend and, in reaching a determination, the court below, unanimously, concurred in following the rule laid down by this court in the cases of *McLouth* v. *Hunt*, (154 N. Y. 179), *Lowry* v. *Farmers' Loan & Trust Co.*, (172 ib. 137), and *Robertson* v. *de Brulatour*, (188 ib. 301).

Eugene La Grove, deceased, by will, gave his residuary estate to a trustee, in trust, to hold the same and "to collect the rents, issues, income and profits therefrom and to pay the net rents, issues, income and profits therefrom, quarterly, to my wife from the time of my death, during the term of her natural life." Upon the wife's death, the will provided for the division of the

principal of the trust among children of the marriage; or, in event of there being none, then, among such persons as would be entitled to share in the wife's estate, in case of intestacy, under the Statute of Distributions in this state. At the testator's death there were no children of his marriage. A portion of his estate consisted in 3,000 shares of the capital stock of the Singer Manufacturing Company. Within two years of the testator's death, the board of directors of the company declared a stock dividend of 100 per cent. and, thereafter, the trustee received from the company a certificate representing 2,920 shares of the new stock; eighty shares of the estate holdings having been sold. The findings of fact, with respect to the declaration of this dividend, were that it "was declared and paid out of accumulated net surplus;" that the "dividend did not intrench upon the capital" and that the "stock dividend represented income solely." It was found that the company had accumulated the surplus from which the dividend was declared, exclusively, from earnings made in the business and not from any disposition of the capital of the company. The question is whether the trustee should pay over the shares of new stock received by him to the beneficiary, or whether he should retain them in the trust.

The question should no longer be regarded as an open one. The cases, which the court below has followed, laid down a rule, which is precisely applicable to the facts in the present case, and when the question first came up for decision, in *McLouth* v. *Hunt*, (*supra*), its determination was imperatively demanded. It had become necessary that a rule should be established upon a fundamental principle and the members of this court agreed in that decision. Prior thereto, in the case of *Riggs* v. *Cragg*, (89 N. Y. 479, 487), a decision of the question was not required; but Judge ANDREWS, speaking for the court, observed that the decisions upon the subject in other states and in England were conflicting and that

"it will be the duty of this court, when occasion arises, to seek to settle the question upon principle, and establish a practical rule for the guidance of trustees and others." The occasion did arise in *McLouth* v. *Hunt*, in 1897, and the question received elaborate consideration. We were aware that it had been considered in the Supreme Court of the state and that the view there taken differed from that taken by the English courts, by the Federal Supreme Court and by the Massachusetts Supreme Court; but, upon a consideration of the question, upon the cases and upon principle, it was determined that a stock dividend, which represents a disposition of accumulated earnings, or profits, belongs to the life tenant of the trust estate. In that case, the Western Union Telegraph Co., by a capitalization of accumulated earnings, made and retained in its hands from time to time, increased its capital stock from $86,200,000 to $100,000,000, and declared a stock dividend of ten per cent. to its stockholders, among whom were the plaintiffs, the testamentary trustees of a trust to pay over the full income to beneficiaries named. It was held that, while the corporation may convert earnings into capital, in so far as life tenants and remaindermen are interested in the question, it is not affected by the mere fact of the ownership of the earnings. In that case, the earnings, which were thus distributed, had accumulated for ten years; six of which preceded the death of the testator. It was considered by the court that the transaction of issuing to stockholders stock certificates against accumulated earnings "was, in substance, a distribution of profits." The question next arose, in 1902, in the case of *Lowry* v. *Farmers' Loan & Trust Co.*, (*supra*). There the trust was to apply the rents, issues and profits to the use of beneficiaries named and the trustee received an extra stock dividend of fifty per cent. upon shares of stock of the Pullman Palace Car Co., held in the estate. The dividend had been declared and paid from the "accumulated net surplus at

the credit of income account" and this accumulation had existed, at approximately the same figure, for some years prior to the testator's death. The question was carefully considered in the light of the decisions and the rule enunciated in *McLouth* v. *Hunt* was followed, without dissent. It was held that, by the declaration of a stock dividend, the stockholders received the representative of income and not of capital. "That which the directors of the corporation distribute among its stockholders, without intrenching upon capital," it was said, "must be comprehended within the term 'profits' and we should assume that the testator intended that what might be paid in that way should belong to the beneficiary. * * * It was, simply, a mode of distributing the profits earned by the employment of the capital." (p. 145.) Again, the question came up to this court in *Robertson* v. *de Brulatour*, (*supra*), in 1907, and was decided with deliberation. The trust in that case was to apply the income and profits of a fund created by the testator to the use of his widow. A cash dividend from an accumulation of surplus running over twenty-six years, eighteen of which preceded the testator's death, was made by the New York & Harlem Railroad Co. This dividend and a stock dividend declared by the Chicago, Rock Island & Pacific Railroad Company, and covering income during the testator's life, were adjudged to be income, payable to the beneficiary. The cases of *McLouth* v. *Hunt* and of *Lowry* v. *Farmers' Loan & Trust Co.*, (*supra*), were approved as establishing the principle that dividends, which distribute accumulated earnings, should be treated as income and go to the life tenant. The portion of the opinion in *McLouth* v. *Hunt* was referred to with approval, which held that where the rents, issues and profits of the trust estate were to be applied to the use of the beneficiary, stock dividends were comprehended within the term "profits." The question, which arose in *Thayer* v. *Burr*, (201 N. Y. 155), related to a distribution by the Adams Express Company

31

of bonds, by way of dividend among its stockholders. The trustee, in that case, received bonds proportionately to the shares of stock held in the trust created by the will. The rule established in the preceding cases was not questioned. It was held that, so far as the bonds distributed by the company represented actual earnings of the corporation, the life tenant was entitled to them and, so far as they represented, not corporate earnings, but, simply, the increased market value of securities owned by the company, that they should be held by the trustee for the remainderman. Finally, in 1912, the question came up in *Matter of Harteau,* (204 N. Y. 292). In that case, the testator, by his will, provided for the creation by his executors of a fund, from which they were to pay $1,200 a year to his wife, $600 a year to his sister and $400 a year to his niece. Upon the death of his widow, the sum of $35,000 was to be expended in the erection of a statue to Lafayette and "whatever sum may remain in the estate" was to be applied to certain benevolent, or charitable, institutions. The testator's widow survived the other two beneficiaries, the sister and the niece. Subsequently, a cash dividend of 100 per cent., payable out of the company's surplus, was declared by the Metropolitan Plate Glass Insurance Company, with the privilege to the stockholders of subscribing at par for additional stock to the extent of 100 per cent. of their respective holdings. Harteau's executors, holding shares of the company's stock, availed themselves of the privilege and received a dividend in new stock. The question was whether it was to be disposed of as capital, or income. The previous cases were not discussed; nor was their authority brought in question. The point for decision was, inasmuch as the dividend, whether taken as a whole, or as apportioned as of the time of the testator's death, "exceeded the aggregate of the annual payments directed by the will and an accumulation of it would be unlawful," whether it should go to the corporations

mentioned in the residuary clause, "as being the parties entitled to the next eventual estate," or to the estate of the deceased niece, as standing in that position. The decision was that the dividend should be apportioned, so that the increase of the surplus after the testator's death should be paid to the city on account of the legacy for the statue. There was no question as between life tenant and remainderman. Practically, as the dividend could not be paid to the annuitant, it all would go to the city, in time. By the decisions in *McLouth* v. *Hunt, Lowry* v. *Farmers' Loan & Trust Co.* and *Robertson* v. *de Brulatour*, the court has laid down a general rule; the correctness and authority of which have not been discussed, and, therefore, not affected, by the cases of *Harteau* and of *Thayer* v. *Burr*. There is nothing to distinguish the facts of this case, in the principle of decision applicable, from the facts of those cases; so far as the language of the will may be regarded. The widow is given the "rents, issues, income and profits" proceeding from the trust estate and that is as comprehensive as was the gift in the other cases. When the dividend is based upon a distribution of "profits" accumulated by the corporation, the rule established gives it to the life tenant. It would be a matter for grave regret, if the conclusiveness of our decisions, so advisedly and deliberately reached, could now be called in question. . It was said by Chancellor KENT, and his words are quoted by Judge COOLEY in his work on Constitutional Limitations, (*50), "if a decision has been made upon solemn argument and mature deliberation, the presumption is in favor of its correctness and the community have a right to regard it as a just declaration, or exposition, of the law and to regulate their actions or contracts by it. It would, therefore, be extremely inconvenient to the public, if precedents were not duly regarded and implicitly followed. It is by the notoriety and stability of such rules that professional men can give safe advice to those

who consult, and people in general can venture to buy and trust, and to deal with each other." It is, in the highest degree, unwise and it reflects discreditably upon the stability of our decisions, when, having established a rule for the guidance of executors and trustees, we allow it to become the subject of doubt and of renewed discussion. What is there in the present case upon which to argue for a reversal of the rule we have established, except the extraordinary size of the dividend ? Certainly, no new reasoning. But the size of the dividend was not considered to be an objection in *Lowry* v. *Farmers' Loan & Trust Co.*, where there was a stock dividend of fifty per cent., and it would be unfortunate, to say the least, to predicate upon that fact an argument for disturbing the rule, heretofore, deliberately adopted and declared by this court.

I, therefore, advise an affirmance of the order and decree appealed from.

CULLEN, Ch. J., WILLARD BARTLETT, CUDDEBACK, HOGAN and MILLER, JJ., concur with CHASE, J.; GRAY, J., reads dissenting opinion.

Judgment accordingly.

MOTIONS to amend remittitur

1. By the respondent in regard to the method of apportioning extraordinary dividends.

2. By the appellant, to recite the appearance on this appeal of the remaindermen and their consent to be bound by the judgment.

3. By the appellant, to permit the trustee to sell part of the stock received from the dividend for the purpose of paying commissions to the trustee thereon.

(Argued December 10, 1913; decided December 16, 1913.)

CHASE, J. The proposition decided by us in this case is, that in all cases of extraordinary dividends, either of money or stock, sufficient of the dividend must be

retained in the corpus of the trust to maintain that corpus unimpaired and the remainder thereof must be awarded to the life beneficiary. The method of accomplishing this result is not difficult. The intrinsic value of the trust investment is to be ascertained by dividing the capital and the surplus of the corporation existing at the time of the creation of the trust by the number of shares of the corporation then outstanding, which gives the value of each share, and that amount must be multiplied by the number of shares held in the trust. The value of the investment represented by the original shares after the dividend has been made is ascertained by exactly the same method. . The difference between the two shows the impairment of the corpus of the trust. If the dividend is of money the amount of that difference is to be retained by the trustee as capital, and the remainder paid to the life beneficiary. If the dividend is in stock the amount of impairment in money must be divided by the intrinsic value of a share of the new stock, and the quotient gives the number of shares to be retained to make the impairment good — the remaining shares going to the life beneficiary. Market value, good will and like considerations cannot be considered in apportioning a dividend.

The direction that the life beneficiary should be awarded $\frac{13956651}{51560757}$ parts of the dividend was erroneous, and the number of shares awarded to her must be ascertained in the method hereinbefore described, which will give to the life beneficiary 999.1 shares, and to the corpus of the trust 1,820.9 shares.

The motion of the appellant to amend the remittitur so as to recite the appearance on this appeal of the remaindermen and their consent to be bound by the judgment herein should be granted. So far as the stock dividend is retained in the corpus of the estate, the trustee is not entitled to commissions thereon. The very purpose of our decision is to make the corpus of the trust fund have

exactly the same value after the division of the dividend as when the trust was originally created and on which the trustee has received his commissions. So far as the trustee is entitled to commissions on the amount awarded to the life beneficiary, which award of course is to be considered as income, it can be adjusted with such beneficiary or application therefor can be made to the surrogate.

The remittitur should be amended as herein provided.

Ordered accordingly.