In the Matter of the Accounting of J. EDMUND KELLY, as Executor of FRED J. KREITNER, Deceased.

Surrogate's Court, Erie County, November 20, 1946.

*J. Edmund Kelly,* petitioner in person.

*Walter J. Mahoney,* special guardian for Paul T. Buerger and another, and any and all after-born distributees and legatees.

VANDERMEULEN, S. The decedent herein died on January 6, 1943, and at that time held as the principal assets of his estate, shares of stock in several close corporations of which the decedent was an officer or director.

In his last will and testament, the decedent, after making certain devises of real property, placed all the remainder of his estate in trust, with the direction to the trustee to pay the net income to his wife, Viola Kreitner, during her lifetime. On

the death of his wife, provision was made for the payment of the corpus of the trust to certain remaindermen. As part of the trust provision the will provided: " * * * and if in any year the net income arising from my said estate does not equal the sum of Ten Thousand Dollars ($10,000.00), then I order and direct my said trustee to pay from the principal or corpus of my estate such sum of money as will, together with said net income, equal the sum of Ten Thousand Dollars ($10,000.00)."

Pursuant to the final order in a proceeding brought in this court for advice and direction as to the disposition of the stocks in the corporations mentioned, stocks were sold to other stockholders of the corporations. In the present proceeding for judicial settlement of the executor's accounts, petitioner raises the question as to the allocation to income or principal of the profits received on the sale of the stock in question. The petitioner claims that the difference between the Federal tax appraisal and the sale price constitutes a profit which is made up of undivided profits of the corporation from the date of death of the testator to the date of the sale of the stocks. The petitioner contends that the profit on the sale is properly allocable to income and is the property of the life beneficiary of the trust.

Probably the nearest case to the instant one in point of facts but not entirely similar is *Matter of Schaefer* (178 App. Div. 117, affd. 222 N. Y. 533). In the opinion the court quoted the three rules set forth in *Matter of Osborne* (209 N. Y. 450) and then said at pages 121–122: " These general rules are not questioned by the trustees, but they say that they are inapplicable here because there had been no payment by way of dividend and no liquidation of the company, which still remains a going concern. This does not, in my opinion, answer the life tenant's claim. It is true that there has been no general liquidation of the company, but there has been a liquidation so far as concerns one-half of its capital stock. The company has bought and holds in its treasury one-half of its capital stock, thus reducing by one-half its outstanding share capital. For that stock it has paid, in cash or its equivalent, what we may assume to represent the value of one-half of its assets. What it may do with that stock hereafter is no concern of the trustees or of their *cestui que trust*. *The trustees have at least liquidated, that is to say, have turned into money, their interest in the company which was formerly represented by shares of stock.* What does this money in their hands represent? Concededly. it represents in part accumulated profits ·earned during the life-

time of the trust, for the stock they sold represented and stood for one-half of the assets of the company, and those assets in part represented accumulated profits. The reason for the rule which requires, in case of a complete liquidation of a corporation, that an apportionment be made between capital and income, seems to me inevitably to require that a like apportionment be made in the present case. Otherwise, as pointed out by CULLEN, J., in *Matter of Rogers (supra)*, the accumulated profits will go to the unlawful increase of the corpus of the estate and the enrichment of the remaindermen at the expense of the life beneficiary. As is said by Thompson on Corporations (2d ed., § 5414) in a section quoted with approval in *Matter of Osborne (supra, 476)*: ' The object of the inquiry in every case should be to do justice to the life tenant and remaindermen and at the same time effectuate the intention of the creator of the trust.' Justice to the remaindermen and to the life tenant requires that the trust fund shall be kept intact, but not enhanced by adding to it any part of the income, and that the life tenant shall receive all of the income whenever that comes into the hands of the trustee. Where the trust fund consists of corporate stock the life tenant will ordinarily be limited to receiving only so much of the profits as the corporation sees fit to distribute in dividends, but *when the accumulated profits come into the hands of the trustee in any form or manner, the life tenant is entitled to receive them.* So far then as the price received by the trustees on the sale of the stock to the corporation represented accumulated, undistributed profits earned since the creation of the trust, the life tenant is entitled to an apportionment." (Italics mine.)

While consideration must be given the rules established by the higher courts, I am of the opinion that no hard and fast rule as to apportionment of dividends and profits can be invoked. I believe I am fortified in this contention by the following in *Matter of Osborne (supra, p. 477)*: " Notwithstanding the difficulty in many cases of apportioning dividends, it is wiser and better to leave an apportionment to courts of equity, in preference to adhering to a rule that depends more upon its simplicity and convenience of enforcement than upon justice and right."

It appears to me that when a testator bequeaths the income from the corpus of his estate to a life beneficiary he fully intends that such should be paid whether in the form of declared dividends or profits, if it can reasonably be done without impairing the principal. In many instances testators are more con-

cerned with the welfare of the life beneficiary than the other interested parties.

In the instant matter a finding either way would not injure the interest of the life beneficiary since she has a power of invasion of the principal. Nevertheless this court feels it should take this opportunity of answering the question at issue and therefore decides that so much of the profits received by the trustees herein on the sale of the stock as represents accumulated and undistributed profits is payable to the life beneficiary as income.

Let the decree of judicial settlement provide accordingly.