Edward S. Silver, J.
The court is asked ■ to approve the allocation of proceeds of sale of real property and stock distribution between principal and income of a testamentary trust, incidental to an intermediate accounting.
The trust was established in 1915 and the decedent’s daughter is the present income beneficiary, with a power of appointment and, in default of the exercise thereof, a gift over to her issue.
No objections have been interposed to the account but, with respect to what is a relatively minor portion of the assets, the court is constrained to withhold its approval of the account as submitted and to direct that it be recalculated.
On April 20,1954 the trustees held, as a portion of the corpus, 200 shares of General Electric Company stock and on that date a three for one distribution of stock was made by the corporation. It is undisputed that where a trust was established prior to 1926, allocation of stock dividends, in the absence of specific provision in the instrument creating the trust, is controlled by the Osborne rule (Matter of Davenport, 27 A D 2d 752). The accountants have applied the rule of Matter of Osborne (209 N. Y. 450) to all stock dividends other than General Electric.
The 1954 distribution by General Electric has heretofore been the subject of litigation. In Matter of Fosdick (4 N Y 2d 646) the allocation of this same stock distribution was in issue. That case was determined on its own peculiar facts and must be distinguished from the case before us in two respects, as the trustees here have adopted the holding of Fosdick as controlling the allocation, and at the same time they have submitted data as to the financial structure of the corporation the effect of which will now be discussed.
In the Fosdick case it was determined that, under the language of the deed of trust therein, 5/12ths of the stock distribution was to be allocated to principal and 7/12ths to income. The language compelling that result was (p. 650) “ anything herein-above contained to the contrary notwithstanding, said Trustee shall transfer to said Donor, or if he is dead to his executor * * * free of all trusts hereby created, any and all stock dividends which it may from time to time receive on any stocks held by it hereunder.” The court, therefore, was interested not in determining and preserving intact the value of the trust fund, which is the Osborne rule, but rather in tracing the original capital of the fund and excluding from principal any shares representing additional transfer of earnings to Capital, If is explicitly decided that the principle of the Osborne rule was not at issue. The instrument before the court here being substan- *781 - tially identical with that in Osborne, the trustees, by allocating 7/12ths of the shares outstanding after the dividend to income, are adopting the result of a case basically dissimilar to this one.
In Matter of Davenport (27 A D 2d 752, supra) where, as here, no specific direction was given in the will as to disposition of stock dividends, the trustee allocated 5/12ths of the shares of General Electric stock, after the same 1954 distribution, to corpus. On appeal it was held that the proper allocation must be based upon the ‘ ‘ intrinsic ’ ’ value of the shares and 1 ‘ intact ’ ’ value of the corpus, when acquired.
The second aspect of the Fosdick decision which must necessarily be distinguished here relates not to legal principles but to financial data published therein. In the Davenport case, the court had before it statistics as to capital and surplus at the time of the distribution apparently derived from the published Fosdick decision. It was thus erroneously led to conclude that the intrinsic value of each share of General Electric stock at the time of distribution was $5. Similarly in a recent decision (Matter of Levy, N. Y. L. J., May 1, 1967, p. 27, col. 4 [Surr. Ct., N. Y. County]) the court determined that the intrinsic value of each share of this stock was $5, apparently relying on faulty statistics derived from Fosdick. It must be noted, however, that in Matter of Fosdick (4 N Y 2d 646, 651, supra) it is reported that the petitioner there stated that capital was increased “ ‘ by the transfer of $252,401,864.40 from the company’s reinvested earnings (earned surplus) ’ ” (emphasis supplied). There is no statement in the report that this represented the entire surplus at that date.
The accountants here, using published values for capital stock, earned surplus and capital surplus have properly calculated the intrinsic value of one share of General Electric stock after the three for one distribution as $11.088. Insofar as the trustees here differ with the Davenport decision as to figures, they are correct. However, they err when they apply the rule of Fosdick, rather than the Osborne rule.
The holding of the Appellate Division in Davenport is exactly in point here; however, the calculation of the intrinsic value of a share in 1954 published in that decision is based upon the incomplete and faulty data supplied to that court and should not be applied here. The court there was informed that the total surplus at the time of the dividend was $252,401,864.40. This figure, added to the total capital stock was then used to arrive at a value of $5 per share. The data furnished this court indicate, however, that on December 31 of the years 1953 and 1954

*782

The trustees correctly determined that the intact value of the fund when the shares were acquired on May 2,1945 was $2,563.60. That amount is to be divided by the intrinsic value of one share, $11,088, to determine how many shares are required to maintain the intact value of the fund. The calculation leads to the result that 231.11 shares of the 600 shares in their possession must be allocated to principal to reach the sum of $2,563.60; the balance of 366.89 shares must be allocated to income. The account should also be amended to show the proper principal and income commissions attributable to the reallocation.
The method employed by the trustees in apportioning the proceeds of the sale of realty between principal and income is correct, and as there are no objections, the proposed apportionment is approved.