Owen McGivern, J.
In this proceeding pursuant to article 79 of the Civil Practice Act for the judicial settlement of the accounts of the surviving trustee of an inter vivos trust, all parties have requested a preliminary determination as to the allocation, as between principal and income, of certain stock dividends and stock splits received by the trustee.
The only relevant provision of the trust indenture provides: ‘ ‘ All cash dividends, distributions and divisions issued or paid upon the stock of any corporation forming part of the trust estates herein created shall be paid over as income to the person or persons entitled to receive the income from the trust estate.”
An executor of a deceased income beneficiary argues that the words ‘ ‘ distributions and divisions ’ ’, as used in the foregoing-excerpt from the trust indenture, mean “ stock distributions and divisions.” This contention cannot be accepted. It is manifest that the word “ cash ” modifies the words “ distributions and divisions ” and that the quoted sentence has no applicability to stock distributions or divisions. Had the grantor intended the sentence to cover stock distributions and divisions, it would have been easy for the skilled draftsman of the instrument to have inserted the word “ stock ” therein.
*645 The question remains as to whether, there being no direction in the trust instrument, this trust is governed by Matter of Osborne (209 N. Y. 450 [1913]), or by Personal Property Law (§ 17-a). The Osborne case holds that stock dividends which do not impair principal belong to income. By chapter 843 of the Laws of 1926 enacted and effective May 17, 1926, section 17-a was amended to read as follows: “ Unless otherAvise provided in a will, deed or other instrument, which shall hereafter be executed and shall create or declare a trust, any dividend Avhich shall be payable in the stock of the corporation or association declaring or authorizing such dividend * * * shall be principal and not income of such trust.” (Emphasis supplied.)
The solution of the instant problem depends upon the interpretation of the two italicized words and their application to the trust sub judice. The executor of the deceased life beneficiary argues that ‘‘ hereafter ’ ’ means after May 17, 1926, i.e., starting on May 18, 1926, and that the trust indenture Avas “ executed ” May 17, 1926. The guardian ad litem argues that “ hereafter ” includes any time on May 17, 1926 and that the trust indenture was not ‘ ‘ executed ’ ’ until May 21, 1926. Manifestly, if the guardian is right in either contention, section 17-a is applicable to the instant trust and the stock dividends and stock splits in dispute must be allocated to principal.
The executor cites two cases, Matter of Norton (129 Misc. 875, 887), and Matter of Lawton (133 Misc. 820, 822, affd. 227 App. Div. 830 [1929]) in Avhich it Avas said that section 17-a was applicable only to trusts executed after May 17, 1926. However, in neither of these cases was there involved a trust claimed to have been executed on that date. Accordingly, these authorities constitute mere dictum.
Two other cases relied on by the executor on this point, Matter of Brenner (170 N. Y. 185 [1902]), and Matter of Wendell v. Lavin (246 N. Y. 115 [1927]) are similarly dictum, for in neither of them did any significant event occur on the day the Constitution became effective.
On the other hand, Croveno v. Atlantic Ave. R. R. Co. (150 N. Y. 225 [1896]) cited by the guardian ad litem, is directly in point, and therein it was held that the Governor signed the amendment in question at 12:01 a.m. on May 12, 1896, and that a judgment rendered later that day was ‘ ‘ hereafter rendered ’ ’ Avithin the meaning of the statute.
Arrowsmith v. Hamering (39 Ohio St. 573 [1883]) discussed by the New York Court of Appeals in the Croveno case (supra, pp. 229-230) also sustains the position of the guardian ad litem *646 herein. In that case an amendatory statute concerning petitions in error to the Ohio Supreme Court provided that it should be applicable to “ ‘ proceedings hereafter brought in or into the supreme court’” (italics supplied). The Ohio Supreme Court unanimously held that the new statute applied to a case filed on the date of enactment thereof in the absence of evidence that the case was filed before the actual hour of enactment.
To the same effect as the Croveno and Arrowsmith cases is People ex rel. Taylor v. Welde (28 Misc. 582 [1899]). In that case removal proceedings were started against relator 1 ‘ on the morning ’ ’ of the day a statute was enacted. The statute was held applicable to the removal proceedings since no evidence was offered to contradict the presumption that the statute was approved at 12:01 a.m.
In the instant case, the executor has not requested leave to offer evidence as to when on May 17, 1926 Governor Smith approved the statute in question. Accordingly, on the authority of the foregoing cases, it must be held that the statute applies to a trust indenture executed on that date.
Furthermore, the evidence presented indicates that the instant trust indenture was not “executed” within the meaning of the statute until May 21, 1926. The document commences “ This Indenture, made the 17th day of May 1926, between, Henry S. Ayer * # * party of the first part, and the Farmers Loan & Trust Company * * * and Edward Pen-' nington Pearson * * * parties of the second part.” The party of the first part was the grantor, the parties of the second part the trustees. The copy of the indenture annexed to the petition herein is signed and acknowledged only by the grantor and no space is provided for signature or acknowledgment by the trustees. The grantor’s acknowledgment is dated May 17, 1926. Annexed to the memorandum of the guardian ad litem is a copy of a letter of the corporate fiduciary dated May 21, 1926 acknowledging receipt “today” of a copy of the declaration of trust. The authenticity of this letter is not challenged.
In Ross v. Ross (233 App. Div. 626, 637 [1st Dept., 1931], affd. sub nom. Hutchison v. Ross, 262 N. Y. 381 [1933]), it was said: ‘ ‘ The law is too well settled to require the citation of many authorities that any deed or instrument, although fully executed, is without force or effect until delivered.”
The word “ executed ” has a variety of meanings, and had the instant trust indenture contained spaces for the trustees’ signatures and acknowledgments, it certainly could not be *647 claimed that the document had been “ executed ” within the meaning of section 17-a until all parties had signed. As a matter of law, as appears from the foregoing quotations from the Ross case (supra), delivery to and acceptance by the trustees were essential to give the trust validity. It can make no difference whether such delivery and acceptance were manifested by their signing the trust instrument, the usual procedure, or by their acknowledgment of receipt thereof, as in the instant case. Until May 21, 1926, when the corporate fiduciary acknowledged receipt of the trust indenture, the trust was of no legal consequence. Until that date, the trust indenture cannot be regarded as “ executed ”, as that word is used in section 17-a.
Accordingly, both because section 17-a must be held applicable to all trust instruments “ executed ” on May 17, 1926 in the absence of evidence as to the hour of enactment of the statute, and because the instant trust indenture was not “executed” until four days thereafter, it is held that the rule of Matter of Osborne (209 N. Y. 450, supra) is inapplicable to the instant trust.
In the recent case of Matter of Payne (Bingham) (7 N Y 2d 1, 12 [1959]) the Court of Appeals indicated that if the question were presented, it might reconsider the Osborne rule and stated that the rule “ has been recognized as too favorable to the income beneficiary ” and should not be extended. It is consonant with the spirit of the majority opinion in that case not to apply the Osborne rule where there is any doubt as to its applicability. In the instant case, for each of the reasons above stated, it must be held that the Osborne rule is inapplicable.
Accordingly, it is held that the stock dividends and stock splits in question must be allocated wholly to principal in accordance with Personal Property Law (§ 17-a).