In the Matter of the Construction of the Will of HERMAN J. MULLER, Deceased. CHASE MANHATTAN BANK, as Trustee of the Trust Created under the Will of HERMAN J. MULLER, Deceased, et al., Appellants; LILY T. BEHREUS, Respondent.

First Department, November 16, 1961.

*Daniel G. Tenney, Jr.,* of counsel (*Milbank, Tweed, Hope & Hadley,* attorneys), for Chase Manhattan Bank, appellant.

*Henry H. Sternberg,* as special guardian of Carol P. Rigo and others, infants, appellants.

*Samuel Michelman* of counsel (*Robert F. Welch* with him on the brief; *Olvany, Eisner & Donnelly,* attorneys), for respondent.

STEUER, J.  Herman J. Muller died on April 3, 1939.  His will was admitted to probate on May 12, 1939.  He was a resident of New Jersey and while both parties concede that New Jersey law is to be applied, no appreciable distinction between the law of the sister State as it has application to the facts herein and the law of New York is presented.  We therefore approach the problem as if applicable law is common to both jurisdictions.

The testator left the residuary of his estate to a trust of which his wife was the life beneficiary.  The will set up other trusts and instructions to the trustees applicable to all trusts are found in article Eighth of the will, including the following which gives rise to the controversy now before us: " I direct that all stock dividends, extraordinary cash or scrip dividends shall be deemed income under the terms of the trusts herein created."

In the trust in May, 1960, were 330 shares of Ohio Edison Co. $12 par common stock. At that time this company changed its capitalization by increasing the par value of its shares from $12 to $15 and issued two shares of the new $15 par stock for each share of $12 par stock then outstanding. The result as far as the trust was concerned was that it previously had 330 shares with a par value of $3,960 and it now had 660 shares with a par value of $9,900.

The life beneficiary contends that she is entitled to the difference in par value, or 396 of the new shares, leaving the trust with 264 shares. The trustee claims that the trust should retain all the shares but, if this claim is rejected, that it should retain a greater number — that number to be determined in accord with a formula discussed below.

All parties agree that the disposition of the shares depends on the interpretation of the quoted clause of the will and that the true guide to that interpretation is the meaning intended to be given to the words by the testator. From the will itself little of significance can be gleaned. The general scheme of the testator reveals no pattern that is not susceptible, with the aid of clever argument, to any interpretation that one may desire. Aside from the will, the only relevant fact is that the testator was an active stockbroker and hence would probably use the words, common in his occupation, as they were understood in the stock market. The difficulty with that approach is that there is no definitive definition of a stock dividend in common parlance, nor was it established that a greater refinement of the term has been accepted in the stock market.

The trustee's claim to retain all of the stock is based on the fact that the Ohio Edison Company never described the issue as a dividend but as an issue in connection with a recapitalization. We find nothing to induce the belief that the testator would be influenced by the designation given by the company to the issue. Nor do we find any support for the opposite contention, namely, that every distribution would have been regarded by him as a stock dividend. Rather do we adhere to the view that one who uses the language of Wall Street would speak of a dividend as a distribution of corporate earnings. As to what constituted such earnings, in the absence of proof of any other intent it is familiar learning that he will be assumed to intend the meaning ascribed by the law. This would naturally have particular application in an instrument which distinguished principal from income.

We now turn to the question of how the law treated stock distributions, whether called dividends or not, as regards their

being principal or income. In the absence of testamentary provisions, by statute a stock dividend is principal (Personal Property Law, § 17-a), and this merely codified the common law — at least when capital surplus was the source of the dividend (*Matter of Lissberger,* 189 Misc. 277, affd. 273 App. Div. 881, motion for leave to appeal denied 298 N. Y. 934). The reason is quite clear — a stock dividend does not increase the trust's proportionate share of the corporate capital (see *Equitable Trust Co.* v. *Prentice,* 250 N. Y. 1, 12), and no part of it can be disbursed without reducing that proportionate share. As regards a stock dividend which represents a capitalization of earned surplus, a different rule prevailed at common law. In that case the rule was that the dividend belonged to the life beneficiary, except insofar as it impaired the principal of the trust (*Matter of Osborne,* 209 N. Y. 450). The exception was clarified to an extent in *Matter of Payne* (*Bingham*) 7 N Y 2d 1). There the rule of the *Osborne* case was not questioned by the parties so the court for that reason accepted it. The conclusion was reached that the exception in regard to impairment of principal required, at least, that where new shares were issued that portion of the increased capital that was realized from capital surplus was not income. As to surplus accumulated from earnings realized before the trust acquired the stock, no decision was made for the reason that the trustee failed to raise the question and did not appeal from an allocation based on the proportion of earned surplus to the amount transferred to capital. A strong indication of the court's viewpoint is, however, discernible (*Matter of Payne, supra,* p. 9).

At this point it is well to bear in mind that the court in both the landmark cases, *Osborne* and *Payne* (*supra*), was concerned with the question of whether a stock dividend was income, as the word income was used in the respective trust instruments. And the rules formulated are that such dividends are income only to the extent that they represent capitalized earnings, with the further proviso that the question is open as to whether the surplus earnings so capitalized should include surplus earnings already accumulated at the time the trust acquired the stock as well as earnings accumulated thereafter. The question is, however, raised by the trustee here and if reached must be decided. But here the main question is somewhat different — we are asked to give the meaning of the words "stock dividend", rather than the word "income".

The quoted portion of the Eighth article of the will enables a definitive answer to that open question as far as this will is concerned. Note that the clause provides for distribution to

the life beneficiary of extraordinary cash dividends. Such dividends are those in excess of the dividends usually paid from current income and they may represent either a nonrecurring present realization of corporate income or a decision to distribute all or a part of accumulated earnings. As such a dividend if paid in cash would undoubtedly accrue to the life beneficiary, it would follow that if instead of cash the distribution represented the same earnings in the form of capitalized stock, the testator intended such stock to be included.

The record here shows that the increase in common stock capital of the Ohio Edison Company as a result of the transaction in question amounted to $114,961,482. Of this sum surplus earnings accounted for $39,146,822, or .3405 of the total. Applying that percentage to the $5,940 of additional par value received by the trust would result in $2,023.57 of par value, or 134 of the new shares plus $13.57. And those shares plus the extra cash should be distributed.

In so concluding we have not overlooked two contentions of the respective parties. The life beneficiary points out that six prior distributions in stock of other companies have been received and that the trustee, at the direction of the Surrogate, has awarded the entire distribution to the life beneficiary and the trustee has not appealed from any of these earlier rulings. We do not have the facts of those distributions before us and so cannot say whether we would have been in accord or not. But assuming the position most favorable to the argument, namely, that these orders reflected distributions not in consonance with the rules here set out, we cannot agree with the conclusion that they "make the law of the estate". Firstly, we do not understand the phrase. If it means that the trustee having made an improper distribution, even by court order, is thereby bound to continue making improper distributions, we cannot agree. If that proposition comes into play only after the second or some subsequent distribution, we are still not receptive to the argument. The trustee has discretion whether to burden the estate with the cost of an appeal and is doubtless influenced by the monetary as well as the legal consequences. His failure to appeal does not bind the estate.

The other contention is made by the trustee. He asks that any distribution ordered be in the cash equivalent of the stock rather than the stock itself. We find no sanction for this in the will. As far as the stock received represents a stock dividend it is that which is to be distributed, not its cash equivalent. This would not apply to the small cash balance, as to which no feasible distribution in kind could be made.

The decree should be modified on the law and the facts and the trustee is directed to make distribution in accordance with the directions herein given, with costs payable out of the estate to all parties submitting briefs on this appeal.

McNALLY, J. (dissenting). The decree should be affirmed.

This appeal involves the proper allocation between the trust and the life beneficiary of 660 shares of common stock of Ohio Edison Company. Decedent, a New Jersey resident, died April 3, 1939, leaving a will dated July 3, 1929, which was admitted to probate on May 12, 1939.

The sixth paragraph of the will devises the residuary estate to trustees to pay the net income to the widow during her lifetime and upon her death the principal is directed to be divided into shares equal to the number of living and previously deceased children of the decedent, one share to be paid to each of the living children and the descendants of deceased children to take the share of their parent.

The eighth paragraph of the will provides: " I direct that all stock dividends, extraordinary cash or scrip dividends shall be deemed income under the terms of the trusts herein created. "

The trustee initially acquired 200 shares of Ohio Edison Company stock on October 24, 1949. Prior to May 11, 1960 the trust owned 330 shares. On said date the trustee received as a dividend from Ohio Edison Company 330 shares of said stock. Prior to said receipt Ohio Edison Company took the following steps:

1. The authorized shares were increased from 8,000,000 to 20,000,000.

2. It increased the par value of the common shares from $12 to $15.

3. It transferred from the earned surplus account to the capital account $39,146,822; from the capital surplus account to the capital account $75,814,660. Prior to said transfers the capital account stood in the sum of $76,640,988. The additions to the capital account above described brought its total to $191,602,470.

4. It authorized an increase of the issued shares from 6,386,749 to 12,773,498 which enabled the company to issue one additional share for each outstanding share. The number of issued shares multiplied by the par value of $15 is equal to the amount of capital set up on the books of the company, to wit, $191,602,470.

Decedent having died resident in New Jersey, the law to be applied is that of New Jersey. (Decedent Estate Law, § 47.)

The law of New Jersey looks to the intent of the testator as expressed in the will (*Matter of Fisher,* 115 N. J. Eq. 329), and is in accord with the law of New York (*Matter of Fosdick,* 4 N Y 2d 646). The will would seem to express the intent of the testator to make available to the income beneficiary, his widow, all stock or cash dividends of any nature, kind or description. The bases for this conclusion are: (1) the content of paragraph eighth; (2) the close relationship of the testator and the life beneficiary; (3) the fact that the testator was not concerned about immediate provision for anyone except the life beneficiary (it will be noted that the provision for disposition of principal is contingent in that the remaindermen are to be ascertained at the time of death of the life beneficiary); and (4) an additional external fact is that the decedent was a stockbroker and presumably aware of the implications of the terminology of paragraph eighth.

The rule of allocation announced in *Matter of Osborne* (209 N. Y. 450) applies when the testator has not expressed any contrary intent. (See *Matter of Lloyd,* 292 N. Y. 280, 285.)

It will be noted that prior to the stock dividend here involved the number of shares held by the trust was 330. The effect of the allocation made by the learned Surrogate is to reduce the number of shares now held by the trust to 264. The reduction reflects the increase of the par value of shares from $12 to $15. In other words, the total of 264 shares at $15 per share is equal to the total of 330 shares at $12 per share.

In *Matter of Payne* (*Bingham*) (7 N Y 2d 1) the parties accepted the applicability of the rule of *Matter of Osborne* (*supra*). Assuming its relevancy on a question governed by New Jersey law, the holding would appear to be inapplicable where, as here, the testator's intention is to make available to the life beneficiary all stock or cash dividends of any nature, kind or description.

RABIN, J. P., and EAGER, J., concur with STEUER, J.; McNALLY, J., dissents in opinion in which STEVENS, J., concurs.

Decree modified on the law and the facts and the trustee is directed to make distribution in accordance with the directions given in the opinion of this court filed herein, with costs payable out of the estate to all parties submitting briefs on this appeal. Settle order on notice.