In the Matter of the Estate of WILLIAM E. DODGE, Deceased.

Surrogate's Court, New York County, May 2, 1962.

*Milbank, Tweed, Hope & Hadley* (*Daniel G. Tenney, Jr.*, and *Paul C. Lambert* of counsel), for First National City Trust Company, as trustee, petitioner. *Shearman & Sterling* for Ella L. Dodge, respondent. *Pauline O. Field,* as special guardian for Jessie Reed and others, infants, respondent.

S. SAMUEL DI FALCO, J. This is a proceeding brought by the trustee for approval of allocations of stock dividends between principal and income made by them since September 21, 1951, the closing date of their last account, and for instructions with respect to the proposed allocation of the extraordinary stock dividends of four corporations which have been received, but which have not as yet been allocated between principal and income.

It is alleged by the trustee that the proceedings were instituted as a result of the opinion of the Court of Appeals in *Matter of Payne* (7 N Y 2d 1) which in the opinion of the trustee raised doubts and uncertainty as to the continued validity and force and effect of the *Osborne* rule (*Matter of Osborne,* 209 N. Y. 450) and, therefore, of the propriety of the proposed allocations of

the extraordinary stock dividends it now has in hand. The unallocated extraordinary stock dividends consist of dividends declared by the General Electric Company on June 11, 1954, the General Foods Corporation on June 5, 1956, the Standard Oil Company of Indiana on December 1, 1954 and Texaco Inc. on June 9, 1956.

The will in the case at bar was executed by the testator prior to May 17, 1926, the effective date of section 17-a of the Personal Property Law as it now reads, and all allocations of stock dividends as between principal and income must be made under the rule laid down in *Matter of Osborne (supra)*. (*Equitable Trust Co. of N. Y.* v. *Prentice*, 250 N. Y. 1.) All of the proposed allocations of the extraordinary stock dividends involved herein have been subject to prior judicial review and have been approved (*Matter of Kirk*, 17 Misc 2d 277; *Matter of Fosdick*, 4 N Y 2d 646; *Matter of Payne, supra*; *Matter of Harjes*, 12 Misc 2d 891; *Matter of Wren*, 21 Misc 2d 494; *Matter of Davis*, 11 Misc 2d 372) but the trustee nevertheless seeks the reassurance of this court that what it has done in the past and what it seeks to do in the immediate future is proper.

The sole income beneficiary has interposed an answer in which she specifically approves and joins in the request for ratification and approval of the allocations made to date and for approval of the proposed allocations with respect to the four stock dividends received by the trustee which have not as yet been allocated. The special guardian, however, appointed to safeguard the interests of contingent remaindermen, has rejected the applicability of the *Osborne* rule with respect to proposed allocations and has gone to great lengths to point out the inequities which will result from the application of the rule.

The unusual benefits which accrue to income beneficiaries as a result of the application of the *Osborne* rule have been a matter of concern to this court for some time, but by reason of the rulings of the Court of Appeals this court was, and is powerless to relieve the situation. That the application of the *Osborne* rule favors income beneficiaries has been apparent for many years (*Matter of Payne, supra*) but despite this the rule has not been changed, repudiated or rejected, and remains the law in the State of New York with respect to the allocation of stock dividends between principal and income as to all trusts created prior to May 17, 1926.

The principle of intact value enunciated in the *Osborne* case serves to hold the line against too great an encroachment upon or depreciation of trust principal, but the fact remains that the

allocation of stock dividends to income based upon the transfer of earnings or earned surplus to capital of funds sufficient only to cover the par value of the new stock issued deprives the trust principal of its proper share in the growth of the corporation.

Each of the corporations which declared the dividends now in question had a definite ascertainable worth on the date the stock dividends were declared. The trust principal which owned the stock of that corporation had an equity in the corporation and was entitled to share in the growth of the corporation in proportion to its ownership. In each instance a computation will show that the percentage interest or equity that the trust principal had in the various corporations after the allocation of stock dividends was less than it was before the allocation of stock dividends despite the fact that the allocations were made strictly in accordance with the intact value principle of the *Osborne* case. Thus trust principal has been deprived of a share of the growth of the corporation which occurred while all the shares were part of the trust principal and also of its proportionate share of the future growth of the corporation.

In *Bourne* v. *Bourne* (240 N. Y. 172, 175) Judge Andrews, in commenting upon the perplexity of the problem, stated: "Our main purpose has been to preserve intact the capital of the trust estate, increased or decreased by any normal rise or fall in values, assigning to the life tenant but the income therefrom." The continued application of the rule laid down in *Matter of Osborne* (*supra*) with respect to the allocation of dividends between principal and income would appear to negate that "main purpose". Certainly the capital of trust estates is no longer receiving its fair share of "any normal rise * * * in values."

Corporate enterprise in the United States has undergone many revolutionary changes since 1913 when the *Osborne* case was decided. The growth and complexity of our giant corporations and the means devised by these corporations to effect tax savings and improved share marketability could hardly have been contemplated or foreseen by our courts at a time when income taxes were unknown. The plain fact is that an equitable rule devised by our courts at that time no longer remains equitable, because of many varied and unforeseen factors. These factors have caused the repudiation of the rule in the State of Pennsylvania (*Matter of Cunningham*, 395 Pa. 1) and have elicited adverse comment by legal editorial writers (60 Col. Law Rev. 557) but as yet no change has been made in the rule insofar as the State of New York is concerned. There is no doubt that this difficult and perplexing problem should be restudied with a

view towards arriving at an equitable solution to the problem not quite so arbitrary as section 17-a of the Personal Property Law. Perhaps the solution lies in crediting income beneficiaries with exactly the amount, in cash, or stock at the fair market value thereof, that it transferred from earnings or earned surplus to capital when an extraordinary stock dividend is declared, regardless of the number of shares issued for each share held and regardless of the designation or name given to the dividend by the issuing corporation.

However, as indicated above, this court must abide by the rule of law laid down in *Matter of Osborne* (*supra*). Accordingly, the application of the trustee for approval of the allocations thus far made, and for approval of the proposed allocations is granted.

The fees of the attorneys for the trustee are fixed and allowed in the sum requested which shall be payable out of the corpus of the trust estate.