Harry G. Herman, S.
In this trustee’s accounting the court is asked to approve the allocation between principal and income of certain stock distributions which have been apportioned in purported compliance with the rule in Matter of Osborne (209 N. Y. 450).
The decedent died on April 5, 1923. By a decree of this court dated April 30, 1923, a will dated June 9, 1920, a codicil dated January 31, 1922, and a codicil dated December 11, 1922, were admitted to probate.
The trust terminated on the death of the widow of the testator on February 18, 1963, and the remainder became payable to the then living issue of decedent’s marriage consisting of four grandchildren, the children of the only child of such marriage, a son who predeceased his mother.
Approval is sought of the allocation of a 1960 distribution of stock in the Insurance Company of North America, a 1960 distribution of stock of Hartford Fire Insurance Company, and a 1957 distribution of stock of Continental Oil Company.
The executors under the will of the deceased widow of testator as well as the accounting trustees contend for the allocation as set forth in the account, and the adult remaindermen of the trust and the special guardians representing the infant remaindermen object to such apportionments.
The prior accounts of proceedings of petitioners’ predecessor corporation and its then cotrustees were settled by decrees of this court dated December 17, 1952 and December 1, 1958, the former decree covering the period from March 31, 1949 to September 30, 1952, and the latter decree covering the period from September 30, 1952 to October 8, 1956. During each of the prior accounting periods, the trustees received distributions of capital stock of both insurance companies virtually identical with those involved in this accounting proceeding; and such distributions were allocated in the same manner as apportioned *507 in this proceeding, and in the absence of objection, this court expressly approved the requested apportionments as to stock distributions covered by the prior accounting proceedings.
The decedent having died prior to May 17, 1926, the effective date of section 17-a of the Personal Property Law, such stock distributions, at least in the absence of any testamentary provisions to the contrary, would be apportioned under the principles enunciated in Matter of Osborne (209 N. Y. 450, supra). See, also, Matter of McMurtry (35 Misc 2d 560) and Matter of Dodge (35 Misc 2d 36). Bach of the stock distributions involved was termed a “ stock dividend” by the declaring corporation and allegedly was supported by a permanent capitalization of surplus.
The will contains no express provision with respect to the disposition of stock dividends, stock splits or extraordinary dividends on stocks held by the trustee, as between principal and income. However, by Article “eighth” of the will, the trustees are empowered “to decide with respect to any item, whether it is principal or income of the trust fund, and any such decision of the trustees shall be binding and conclusive against all persons ’ ’. The accounting trustee has taken the position that it is doubtful whether the quoted provision of paragraph “ eighth ” of the will constitutes sufficient authority for it to decide whether stock distributions received are principal or income, and accordingly the trustee has continued the practice followed in the prior accountings in alleged compliance with the law which would be applicable in the absence of any such discretionary power, and in making such allocation allegedly has taken into consideration the rules enunciated in Matter of Osborne (supra).
The adult objectants contend that as to the stock distributions of both insurance companies: (a) the stock distributions involved are not stock dividends but rather stock splits distributable wholly to principal; (b) Article “ eighth ” does not permit any different allocation where a stock split is the necessary result of the corporate action taken; and if the court should determine that the trustee exercised any discretion under Article “ eighth ”, it had done so only in attempting to follow the applicable law in the absence of discretion, and that the allocations are improper because the Osborne rule has no application to stock splits as distinguished from stock dividends; (c) that with respect to the stock distributions of Continental Oil Company, the actual cost price has not been preserved under the “ intact value ” rule as set forth in Matter of Osborne (supra).
The special guardians contend that the trustee did not exer *508 cise the discretion created by the will; and, in any event, the rule in Matter of Osborne was not correctly applied by the trustee, and that all of such stock distributions must be allocated to principal pursuant to a correct interpretation of the Osborne rule, or by virtue of a proper exercise by the trustee of such discretion conferred by the will.
In Matter of Osborne (supra), the opinion by Chase, J., at page 477, enunciated the rule that the principal of the trust and any accumulated earnings of the corporation existing when the trustee acquired the stock represented capital, and any increase in the market value of securities was allocable to principal since it represented an enhancement of principal. It was further held that extraordinary dividends payable from the accumulated earnings of the corporation, whether payable in cash or stock, belonged to the life beneficiary unless they entrenched in whole or in part upon the capital of the trust fund as received from the testator, or creator of the trust, or invested in the stock, in which case such extraordinary dividends should be returned to the trust fund or apportioned between the trust fund and the life beneficiary in such a way as to preserve the integrity of the trust fund.
THE 1960 STOCK DISTRIBUTION OE INSURANCE COMPANY OE NORTH AMERICA
In the case of the stock of Insurance Company of North America, on May 6, 1960 the trustee held 5,402 shares of the par value of $5 per share. This stock distribution was declared on April 12, 1960, payable June 15, 1960, to holders of record as of May 6, 1960. The trustee received a 100% stock distribution of 5,402 shares of the par value of $5 a share. Of this dividend 1,838 and 3/100 were allocated to principal to preserve the intact value of principal, and the remaining 3,563 and 97/100 shares were allocated to income.
This stock distribution was provided for by increasing capital through a transfer from “ surplus ” of an amount equal to $5 per share for each share issued and outstanding. On its books of account the company maintained only the single surplus account which is not segregated as between the sources or deposits of assets comprising such surplus.
A reference to the exhibits annexed to the stipulation of fact establishes that as of December 31, 1959, the Insurance Company of North America had “Voluntary Reserves ” of about $336,000,000, capital of approximately $27,000,000, and a surplus of $150,000,000. So far as appears, this company made a practice of keeping its surplus intact as of the end of each year by *509 means of transfers from or to such “ Voluntary Reserves Objectants urge that such voluntary reserves cannot be treated as the equivalent of “ accumulated earnings,”, and thal in the true sense they constitute essentially a fund against which the demands of policyholders have a prior claim.
Objectants contend that the transfers from surplus to support the 1960 stock distribution were derived from what was described as “net operating income” for 1960 and involved drawing on voluntary reserves, paid-in surplus, and increases in the market value of securities, in addition to other sources, in order to support the stock distribution after the payment of cash dividends. The annual average rate of cash dividends paid on North American stock during the six-year period covered by the account based upon the cost of the stock to the trustee is about 15%.
An examination of Exhibit C reflecting the “ Surplus and Reserves ’ ’ for the period from December 31, 1956, through December 31, 1960, shows a balance in the “ surplus ” account of $150,000,000, a balance which remained constant from the years 1956 through 1960. To provide for such 100% stock distribution, objectants contend that the transfer to capital of some $27,046,435 to support what was described as a 100% stock dividend came from an increase in the market value of securities in the sum of $12,023,427, the transfer from voluntary reserves of $11,954,721, on item of “ Surplus Paid In ” of $4,357,331, and several miscellaneous accounts. If such transfers were found to be transfers from capital surplus and not from earned surplus, the stock dividend would be allocable to principal and not to income.
THE 1960 STOCK DISTRIBUTION OF HARTFORD FIRE INSURANCE COMPANY
On March 14, 1960, the trustee held 613 shares of Hartford Fire Insurance Company stock with par value of $10 per share and a book value of $57.9593 per share. On April 1, 1960, the trustee received 613 shares of the par value of $5 per share. The dividend was declared as of March 3, 1960, payable on April 1, 1960, to holders of record as of March 14, 1960. The book value of each share immediately following the dividend was $36.481 per share. Of the 1,226 shares so received 4.39 shares were retained by the trustee and allocated to principal to preserve the intact value, and the remaining 1,221.61 shares were allocated to income.
In the case of this stock distribution of the Hartford Fire Insurance Company the directors authorized a simultaneous *510 100% split and declared a 100% stock dividend of one additional share for each of the new $5 par shares held payable April 1, 1960, and directed the transfer of $26,735,590 from accumulated surplus to its capital account.
The balance sheet of Hartford Fire Insurance Company for the year ending December 31, 1960 shows a net gain from operations of $25,615,219. From this account there were paid cash dividends of $11,763,666. In the “ Consolidated Statement of Gains and Losses ” during 1960 it appears that realized capital losses totaled $3,389,305, and “ Sundry Gains and Losses In Surplus ” amounted to the sum of $7,452,645 ”. Objectants assert that there was no earned surplus from which such stock dividend could be paid without infringing on capital, and that as appears from Exhibit “ E ” capital gains in 1959 provided the only apparent basis for the increase in surplus during 1959.
Exhibit “ G ”, as to the admissibility of which objection has been interposed consists of a statement made by tax counsel for the Insurance Company of North America. The statement is in the form of a letter and alleges that the company maintains for the benefit of fiduciaries a record of the components of its surplus account (“ Consolidated Statement of Capital and Surplus”) although such records are not a part of the official books of the company and are prepared by the accounting department for the purpose indicated.
The statement indicates that as of March 13,1960, the surplus of the company in the amount of $487,984,865 consisted of among other items “Accumulated Earnings” of $130,740,077.
A similar letter designated as Exhibit “ H ”, to which objection also is raised, consists of a letter from the Secretary and Actuary of the Hartford Fire Insurance Company. This letter written in response to an inquiry addressed to the company by the trustee indicates that the amount of the stock distribution was paid solely from earned surplus, in the amount of $26,735,590, and that no part of such dividend was received from, or charged against, capital or paid-in surplus.
In Matter of First Nat. City Trust Co. (Kuhn) (N. Y. L. J., April 16, 1964, p. 15, col. 3) the court passed upon the allocation to income of a substantial number of shares of Insurance Company of North America received as a 100% stock distribution. The trust instrument contained no reference to stock dividends or stock splits and the trustee had allocated the stock distribution in purported compliance with Matter of Osborne (209 N. Y. 450, supra). The report of the Beferee which was confirmed by the court, held' that the 1960 stock distribution of Insurance Company of North America was in *511 substance a stock split rather than a stock dividend, and that the treatment by the trustee of the stock distribution as a stock dividend rather than a stock split was erroneous and rested upon a false premise that such distribution was capitalized by transfers from earned surplus to a capital account of an amount equal to the value of the new shares. The premise was held to be false because the court found that the insurance company had no earned surplus account, in that it maintained a single unsegregated surplus account which contained in addition to funds originally representing earnings, other items such as paid-in surplus and unrealized appreciation on investments all of which were clearly capital in nature, and as a result of which what had been termed as a surplus account was found to be a capital surplus account rather than an earned surplus account. Accordingly, the court held that all of the stock distributions of Insurance Company of North America received in 1954 and 1956 as well as in 1960 were allocable wholly to principal and that the income beneficiary was entitled to none of such shares, citing Matter of Payne (Bingham) (7 N Y 2d 1) and Matter of Lissberger (189 Misc. 277, affd. 273 App. Div. 881).
The capitalization of current earnings or actual earned surplus is a necessary prerequisite to the distribution to income of a stock dividend; and in the absence of evidence of the capitalization of such current earnings were earned surplus, the distribution represents a stock split rather than a stock dividend to which the Osborne rule has no application. Therefore, the entire stock distribution must be credited wholly to principal (Matter of Payne [Bingham), supra; Matter of Lissberger, supra) unless it appears that earned surplus or accumulated earnings was the source of the distribution.
Exhibits “G” and “ N ”, although they do not constitute official financial records of the respective insurance companies, reflect the source of the respective stock distributions. In both cases, it appears that distributions were paid from surplus. In the case of Insurance Company of North America, the distribution is stated to have been paid from “ Accumulated Earnings ”, In the case of Hartford Fire Insurance Company, the distribution is stated to have been made from earned surplus. In both cases the distribution was treated by the companies as a stock dividend rather than a stock split.
None of the attorneys appearing has requested a hearing with respect to the items the subject of Exhibits “G” and “ N ”, and such exhibits are objected to only on the ground that these records are not official statements of the company *512 as disclosed in the annual report for 1960 and cannot he accepted in preference to official statements.
The objection to the admissibility of Exhibits “G” and “H” on the ground that such records cannot be accepted in preference to official statements of the respective insurance companies is overruled. Such statements are accepted not in preference to, but as explanatory of, and supplemental to, the official records of such insurance companies.
Accepting these statements as evidence of the facts stated therein, the court determines that the stock distributions of both insurance companies are stock dividends rather than stock splits, and that such stock dividends were correctly apportioned within the equitable rule of apportionment enunciated in Matter of Osborne. This determination is made without prejudice to the rights of any party, if so advised, to offer common-law proof upon the issue, if any, as to the source of payment of such stock distributions, including if necessary on open or written interrogatories.
THE 1957 STOCK DISTRIBUTION OF CONTINENTAL OIL COMPANY
On January 3, 1957, the trustee held 400 shares of the capital stock of Continental Oil Company, acquired by the trustee at a cost of $48,588.40, and an average cost per share of $121,471 per share. At a meeting held on January 16, 1957, the directors declared a 100% stock dividend payable February 15, 1957, to holders of record as of January 3, 1957, and directed the transfer of $48,906,505 from earned surplus to its capital account thereby increasing the same to $97,813,010. Accordingly, on February 18, 1957, the trustee received 400 additional shares of capital stock of Continental Oil Company and allocated 369.55 of said shares to principal and the remaining 30.45 of said shares to income.
The average price of the old shares on January 16, 1957, was 126%, and the high and low quotations for the new shares on February 18, the date of the receipt of the additional shares, reflected an average price of 57%.
It is not disputed that the Continental Oil stock distribution was a true stock dividend and not a stock split. Objectants contend, however, that the Osborne rule was erroneously applied, because the trustee disregarded the actual cost of the investment and failed to preserve the intact value. In order to preserve principal under the intact value rule enunciated in Matter of Osborne (supra), the entire stock distribution *513 of Continental Oil Company must be allocated wholly to principal.
In behalf of the executors of the deceased income beneficiary it is urged that the grant of authority to the trustee to decide with respect to any item whether it was principal or income and rendering such decision binding and conclusive upon all persons, does not justify the allocation suggested by the trustee. So far as appears, the trustee does not contend that such allocation set forth in its account was made as the result of any asserted exercise of discretion, but rather that the allocation reflected the application of the rule in Matter of Osborne (supra). Under these circumstances, any grant of discretion conferred by the trustee with respect to the allocation of principal and income fails to support the proposed allocation of such stock distributions.